**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Felipe SALINAS, Jr.,
Defendant-Appellant.**

**No. 79–5123.**

United States Court of Appeals,
Fifth Circuit.

Feb. 6, 1980.

---

L. Aron Pena, Edinburg, Tex., (Court-appointed), for defendant-appellant.

Anna E. Stool, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before GODBOLD, HILL and POLITZ, Circuit Judges.

GODBOLD, Circuit Judge:

Salinas was convicted for possession with intent to distribute marijuana, 21 U.S.C. § 841(a)(1). The only issue is denial of his motion to suppress marijuana found in a warrantless search of Salinas' suitcases at a Border Patrol checkpoint located seven miles south of Falfurrias, Texas, on U.S. Highway 281. Salinas was a passenger on a commercial bus that stopped at the checkpoint. A Border Patrol agent entered the bus and questioned passengers concerning their citizenship. The agent asked Salinas where he was born, and Salinas responded that he was born in "the [Rio Grande] Valley." The agent was not sure that Salinas understood what the agent was asking, and for this reason the agent had Salinas get off the bus. The agent considered that he was detaining Salinas for further questioning, and he intended that the bus depart and leave Salinas behind in detention for further questioning.

The agent asked Salinas to identify his luggage. Salinas identified two suitcases. The agent removed them from the baggage compartment, and as he did so he detected a strong odor of marijuana emanating from one of the suitcases. The bus departed. The suitcases were taken into the checkpoint trailer and opened and marijuana was found inside.

The district judge orally denied Salinas' motion to suppress without statement of reasons. On the same day he filed a written order stating:

The Court does hereby take judicial notice of the location, justification, and other physical aspects of the Border Patrol checkpoint near Falfurrias, Texas, which is set up to control the entry of illegal aliens into this country and the traffic in illegal aliens on this side of the border, as determined by this Court in two other criminal actions: *United States of America v. Jesus Sanchez-Garcia and Antonio Rios-Rodriguez*, Cr. No. 73–C–75, and *United States of America v. Bobby Franklin McGary and Jerry Wayne Ellison*, Cr. No. C–78–17. . . . The Court has the authority to take judicial notice of such facts under Rule 201 of the Federal Rules of Evidence. *See United States of America v. Alvarado*, 519 F.2d 1133, 1135 (5th Cir. 1975) [*cert. denied*, 424 U.S. 911, 96 S.Ct. 1107, 47 L.Ed.2d 315 (1976)].

We must consider the two decisions relied on by the district judge in his order, *Sanchez-Garcia* and *McGary*. In *Sanchez-Garcia* the district court considered the status of a checkpoint located 16 miles south of Falfurrias, Texas, on U.S. Highway 281, and in a lengthy written opinion found that it was the functional equivalent of the border. The court discussed in detail the Border Patrol's maintenance of a checkpoint located south of Falfurrias on Highway 281, sometimes located 2 miles south of Falfurri-

as, other times 16 miles south, and occasionally 31 miles south. It found that all of these locations were north of the last side roads leading from the Mexican border and entering Highway 281. It found there was no way anyone could drive around any of the three checkpoint locations and that there were permanent installations at each point. The court discussed in detail the highway network, the population, and the nature of the countryside between Falfurrias and the Mexican border; the traffic count along Highway 281 south of Falfurrias; the number of apprehensions of aliens at the Falfurrias location[s] in FY 1971, 1972 and 1973 (more than 2,000 each year); and the similarity of the Falfurrias checkpoint locations to other points in Texas that previously had been held to be functional equivalents of the border. In addition, the court detailed the operating methods used at the checkpoint and the percentage of vehicles stopped. *Sanchez-Garcia* was appealed and was affirmed by a Rule 21 decision, 517 F.2d 1402 (5th Cir. 1975).

*McGary* was decided by the same judge in the same district court in July 1978. It concerned the Falfurrias checkpoint after it had been removed, in 1973 and 1974, from the 16-mile location to the 7-mile location. The court found that the move was to a fixed and unvarying location where it had become a permanent facility. It found that there were no roads intersecting Highway 281 between the 31-mile and 16-mile locations and the 7-mile location. It found the topography identical for all three locations. It noted the testimony of a Border Patrol agent that the only change in the checkpoint since the entry of the district court's order in *Sanchez-Garcia* was the change in its physical location. The court also found that the checkpoint at the 7-mile location was similar to those near Sierra Blanca, La Gloria, and Sarita, Texas, which already had been held to be functional equivalents of the border. Based on the foregoing the court held the 7-mile location was the func-

tional equivalent. *McGary* was not appealed.

It is not required that the underlying facts concerning a particular checkpoint location be proved over and over again in each case arising out of the same checkpoint location, so long as such facts remain unchanged. A court may take judicial notice of functional equivalent status once it has been established. In *U. S. v. Clay*, 581 F.2d 1190 (5th Cir. 1978), *cert. denied sub nom. Wiley v. U. S.*, 440 U.S. 927, 99 S.Ct. 1261, 59 L.Ed.2d 483 (1979), we employed this approach of judicial notice of "old" but unchanged facts in combination with fresh testimony to establish that the Sarita checkpoint, which had been found to be the functional equivalent of the border when located 5 miles south of Sarita, was the functional equivalent when relocated 14 miles south of Sarita. The approach employed by the district judge in the present case was generally the same, except that the "old" facts were embraced in two prior cases rather than one and one of them covered the specific location at issue here.

The district judge did not err in finding that the checkpoint 7 miles south of Falfurrias is the functional equivalent of the border.[1] Having concluded that the checkpoint at which Salinas' suitcases were searched was the functional equivalent of the border, we hold that the search was valid. Salinas relies upon *U. S. v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), and *U. S. v. Johnson*, 588 F.2d 147 (5th Cir. 1979). *Chadwick* does not, however, apply to a border search. *U. S. v. Carter*, 592 F.2d 402, 406 (7th Cir.), *cert. denied*, 441 U.S. 908, 98 S.Ct. 2001, 60 L.Ed.2d 378 (1979). The privacy interests vindicated by *Chadwick* are inapplicable to the person standing at the border, whether he be standing at the official boundary or at its functional equivalent. *Johnson* required proof that the articles searched had crossed the border, but it was an extended

---

1. Previously we have held that this same checkpoint location is a permanent checkpoint, and have pretermitted reaching the functional equivalency issue. *U. S. v. Arredondo-Hernandez*, 574 F.2d 1312, 1313 (5th Cir. 1978).

border search case. That case did not involve a functional equivalent of the border. Rather, the right to search at a point physically removed from the actual border was based upon proof that the material had crossed the border and then had been followed to the place where search occurred. The underlying considerations permitting a judicial determination that a point physically removed from the actual border is the functional equivalent of the border dispense with the necessity of proving that articles searched at the functional equivalent have in fact crossed the physical boundary.

The court correctly denied the motion to suppress.

AFFIRMED.