UNITED STATES of America,
Plaintiff-Appellee,

v.

Clifford J. ANTONE,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Royce David HEBERT,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Mikal Habeeb AMUNY,
Defendant-Appellant.

UNITED STATES of America,
Plaintiff-Appellee,

v.

Aaron MAXWELL,
Defendant-Appellant.

Nos. 84–1299, 84–1302, 84–1308
and 84–1315.

United States Court of Appeals,
Fifth Circuit.

Feb. 11, 1985.

Rehearing and Rehearing En Banc Denied
March 25, 1985 in No. 84–1308.

Edward C. Prado, U.S. Atty., Sidney Powell, Archie Carl Pierce, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Charles R. Burton, Michael Tigar, Amanda Birrell, Austin, Tex., for Antone.

Gerald H. Goldstein, Ralph A. Lopez, San Antonio, Tex., for Hebert.

Dick DeGuerin, Houston, Tex., for Amuny.

Michael Kennedy, Joseph Calluori, New York City, for Maxwell.

Before GEE, REAVLEY and RANDALL, Circuit Judges.

GEE, Circuit Judge:

The appellants, Clifford J. Antone, Mikal Habeeb Amuny, Aaron Maxwell, and Royce Hebert, were indicted on charges relating to marijuana possession and distribution. After the district court denied their pretrial motions to suppress evidence, the appellants each pleaded guilty to one count of conspiracy, reserving their rights to appeal the district court's rulings to this Court. We hold that the district court's rulings were correct and affirm the appellants' convictions.

The charges against the appellants in this case arise from the same factual background. Each appellant, however, advances different arguments in this appeal. Our opinion therefore first presents a summary of the facts of the case and then separately analyzes each appellant's claims.

## I. Facts

During late October 1982, United States Customs Officer David Harrison received information from a confidential informant who had previously provided Harrison with information that led to six arrests and five convictions on marijuana charges. The informant stated that Allan Granger and a person named Randy were to meet Clifford Antone and Mikal Amuny in Austin, Texas to obtain a quantity of marijuana. The informant also said that the marijuana was to be flown to Austin, but that he did not know where the plane was to land.

Officer Harrison immediately relayed this information to Drug Enforcement Administration (DEA) Agent Richard Braziel in Austin. Agent Braziel called Robert Nesteroff, a narcotics officer with the Texas Department of Public Safety, and asked him to conduct surveillance of Antone's and Amuny's residences and of a club operated by Antone. Nesteroff did so, but observed nothing out of the ordinary.

On November 1 the informant told Officer Harrison that Granger was in the Austin area and that the marijuana had arrived there. The informant stated that Granger was to meet Antone and Amuny at 7:00 that evening to receive the marijuana, adding that Granger was driving a white and blue Chevrolet Monte Carlo with Texas license number PCQ–658. Harrison relayed this information to Braziel. Braziel, who had been investigating Antone and Amuny since 1979, knew from another reliable informant that Antone usually conducted drug transactions in the parking lots of Jo-Jo's and Denny's restaurants located at the intersection of Oltorf Street and Interstate 35 in Austin and that Antone used a black or Hispanic male to make the pick up and delivery.

Agent Braziel and several other agents established surveillance of the residences of Antone and Amuny and of the Jo-Jo's and Denny's restaurants. Between 7:00 and 7:30 p.m., Braziel saw Antone in the Jo-Jo's parking lot standing next to a black Lincoln Continental registered to Amuny and talking with an unidentified black male. A second black male, later identified as appellant Aaron Maxwell, climbed out of a Chevrolet pickup camper and walked over to Antone and the unknown man. The three men talked briefly, and Antone and the unknown man then left in the Lincoln. Maxwell followed in his camper, and the two vehicles arrived at Antone's house a short time later.

Officer Nesteroff had been watching Amuny's residence, where a blue Oldsmobile was parked. At about 7:00 p.m., a Buick registered to Amuny arrived. Shortly thereafter, Maxwell arrived in the camper, parked, and drove away in the blue Oldsmobile. Maxwell drove first to one of Antone's nightclubs, then to Jo-Jo's restaurant. Meanwhile, the agents at Antone's residence observed Amuny's Buick parked on the wrong side of the street and blocking Antone's driveway. Antone and Amuny got into the Buick and drove to Jo-Jo's. Agents at Jo-Jo's spotted Granger's Monte Carlo at Jo-Jo's at this time.

Ten minutes later, Maxwell left in Granger's Monte Carlo and drove to a nearby convenience store where he made a brief telephone call. He then drove to a house at 1713 Sylvan Drive that the agents believed to be a "stash house" for marijuana. Royce Hebert was the owner of this house. Maxwell drove into the garage, closing the garage door behind him. Agent Braziel, pursuing the car on foot, ran beside the house and hid in bushes near the garage. Braziel heard "thuds" of something heavy being put into the trunk of the car and then heard the trunk lid slammed. The garage door opened and Maxwell drove the car away. Braziel then approached the garage and was able to smell marijuana when he put his nose close to the door.

Maxwell drove Granger's car back to Jo-Jo's and went inside. After a few minutes Granger left the restaurant, got into his car, and drove away. The agents followed Granger to the first traffic light on an access road to the interstate and blocked his car. As the agents approached his car, they noticed a strong odor of marijuana. The agents arrested Granger and later ob-

tained a warrant to search Granger's car. The search disclosed 56 pounds of marijuana in the trunk.

Meanwhile, other agents arrested Antone, Amuny, and Maxwell as they were leaving the restaurant. The agents also obtained a search warrant for the house on Sylvan Drive. The search of that house disclosed a basement full of marijuana and that the two upstairs bedrooms were being used for growing, drying, and packaging marijuana. The agents also found several firearms in the master bedroom and scales and marijuana processing equipment in the hall closet. The agents found over 800 pounds of marijuana in the house, along with numerous documents and ledgers indicating marijuana buyers, amounts purchased, and prices.

After the appellants' arrest, a grand jury returned a three-count indictment against them, which was superceded by a four-count indictment. This indictment charged the appellants with distribution of marijuana, possession of marijuana with intent to distribute, and conspiracy to distribute and to possess with intent to distribute marijuana. The appellants made several pretrial evidentiary motions, which the district court denied. The appellants then entered into plea agreements under which they pleaded guilty to one count of conspiracy and preserved their rights to appeal the district court's rulings on their pretrial motions. The district court accepted the appellants' guilty pleas, sentenced each appellant to five years imprisonment, and fined each $15,000.

## II. Discussion of Appellants' Cases

### A. Appellant Clifford J. Antone

Antone appeals from the district court's ruling that the agents had sufficient probable cause to arrest him at Jo-Jo's without a warrant and the court's refusal on that basis to suppress his arrest and the search of his person made incident to the arrest. Antone also argues that he pleaded guilty involuntarily and that the district court had an insufficient factual basis upon which to accept his guilty plea.

### 1. Warrantless Arrest

Antone contends that the agents lacked probable cause to arrest him at Jo-Jo's without a warrant. Probable cause to arrest exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed. *United States v. Woolery*, 670 F.2d 513, 515 (5th Cir.), *cert. denied*, 459 U.S. 835, 103 S.Ct. 78, 74 L.Ed.2d 75 (1982). The probable cause issue must be analyzed under the "totality of the circumstances" as to whether there is a "fair probability" that a crime is occurring. *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *United States v. Marbury*, 732 F.2d 390, 395–96 (5th Cir.1984). The probable cause requirement does "not demand any showing that such a belief is correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983).

The facts of this case indicate that the agents had probable cause to arrest Antone and to conduct a search incident to the arrest. Before Antone's arrest, the agents had received specific and detailed information concerning the marijuana transaction from informants who had provided reliable information in the past. The informants told the agents when, where, and how the transaction would occur. The agents' surveillance corroborated the informants' tips. These facts, viewed in the totality of the circumstances, established probable cause. *See United States v. Cisneros-Mireles*, 739 F.2d 1000, 1002–03 (5th Cir.1984); *United States v. Mendoza*, 722 F.2d 96, 101–02 (5th Cir.1983).

### 2. Factual Basis of Guilty Plea

Antone next contends that the district court erred in accepting his guilty plea because the government failed to establish a sufficient factual basis of his guilt. Antone argues that the facts the government offered show merely that Antone was in

the Jo-Jo's restaurant at the time the alleged criminal activity occurred, adding that the district court had no basis to conclude that he understood the charges against him at the time he pleaded guilty because the district court did not inform him of the "esoteric nature of the conspiracy count."

These contentions are meritless. To support a guilty plea, the prosecutor must present evidence to the subjective satisfaction of the district court which indicates that a defendant actually committed the offense to which he is pleading guilty. *United States v. Davila,* 698 F.2d 715 (5th Cir.1983). At the re-arraignment hearing (at which the district court accepted the appellants' guilty pleas), the prosecutor set forth the facts he expected the evidence at trial to show and read pertinent portions of the indictment. He stated that he would introduce evidence to show that the agents observed Antone talking with a black male in Jo-Jo's parking lot on the evening of November 1 and that the agents observed Amuny and Antone drive together from Antone's residence to Jo-Jo's that evening. The prosecutor also stated that he would show that personal documents belonging to Antone were found in the agents' search of the house on Sylvan Drive and that the agents found a beeper device on Antone's person and a corresponding beeper in the house. Finally, the prosecutor stated that eight telephone calls were made from July 1 to October 16, 1982, between a phone used by Allan Granger and Antone's residence or the beeper found on Antone at the time of his arrest. The prosecutor's presentation of these facts provided the dis-

trict court with a sufficient basis on which to conclude that Antone was guilty of the offense to which he was pleading guilty.[1]

In addition, the district court followed the dictates of Rule 11 of the Federal Rules of Criminal Procedure to the letter at Antone's sentencing hearing in assessing whether Antone understood the charge against him and the significance of his guilty plea. *See United States v. Araiza,* 693 F.2d 382, 384 (5th Cir.1982). The court specifically asked Antone whether he had committed the offenses charged, and Antone answered, "Yes, sir." The court then asked Antone: "That's what you are pleading guilty to?" and Antone again replied "Yes, sir." Moreover, Antone was represented by two competent and experienced criminal trial attorneys during this phase of the proceedings. Nothing in the record indicates that Antone failed to understand the charges against him. *See United States v. Dayton,* 604 F.2d 931, 938 (5th Cir.1979) (en banc), *cert. denied,* 445 U.S. 904, 100 S.Ct. 1080, 63 L.Ed.2d 320 (1980).

### 3. *Voluntariness of Antone's Plea*

Antone's final contentions concern the voluntariness of his guilty plea and alleged government misconduct. Antone contends that the government deceived him by stating that only Royce Hebert had standing to object to the search of the house on Sylvan Drive. Because of this "misrepresentation," Antone argues, he believed that the evidence seized in the search of the house could be used against him at trial. Therefore, Antone contends, he pleaded guilty involuntarily. Antone also

---

1. In addition, each defendant was present when the indictment was read in open court. Count One, to which the defendants pleaded guilty, stated in pertinent part:

On or about November 1st, 1982, in the Western District of Texas and diverse other places to the grand jurors unknown Defendants Clifford J. Antone, Mikal Habeeb Amuny, Allan Joseph Granger, Royce David Hebert also known as Roy Sneed, and Aaron Maxwell unlawfully, willfully, knowingly did combine, conspire, confederate and agree together and with each other to distribute and possess with intent to distribute marijuana, a Schedule 1

controlled substance contrary to Title 21, United States Code, Section 841(a)(1) and in violation of Title 21, United States Code, Section 846.

Thereafter the court addressed each in identical terms regarding the charge. Antone's colloquy with the court was as follows:

THE COURT: Mr. Antone, is that what you did?
MR. ANTONE: Yes, sir.
THE COURT: That's what you are pleading guilty to?
MR. ANTONE: Yes, sir.

claims that the government violated its plea agreement with him by providing Texas authorities with information that they used to levy a sales tax on the marijuana transactions in which Antone took part.

These contentions are meritless. The record discloses no action or misrepresentation by the government that prevented Antone from establishing his standing to contest the search. *See Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 425–26, 58 L.Ed.2d 387, 394–95 (1978). Furthermore, the record indicates that Antone had no reasonable expectation of privacy in the house. Finally, the record contains no evidence regarding the Texas tax authorities on Antone's alleged tax liability. This issue is therefore not properly before us.

### B. Appellant Mikal Habeeb Amuny

Amuny argues on appeal that the agents lacked probable cause to arrest him at Jo-Jo's restaurant and that the district court had an insufficient factual basis upon which to accept his guilty plea.

#### 1. *Warrantless Arrest*

Amuny contends, as did Antone, that the agents lacked probable cause to arrest him as he left Jo-Jo's restaurant. Amuny's argument is identical to Antone's on this point. For the reasons stated in the discussion of Antone's argument on this issue, we hold that the district court correctly ruled that the agents had sufficient probable cause to arrest Amuny without a warrant.

#### 2. *Factual Basis of Guilty Plea*

█ Amuny also contends that the district court had an insufficient factual basis on which to accept his guilty plea. As we have noted earlier, the prosecutor must present evidence sufficient to provide the district court with a basis to conclude to the court's subjective satisfaction that a defendant is guilty of the offense to which he is pleading guilty before the court can accept the guilty plea. *United States v. Davila*, 698 F.2d 715 (5th Cir.1983). Here, the prosecutor's summary of evidence to be presented at trial (which Amuny quotes

and adopts as his statement of what the evidence would have shown) indicates that the district court had ample facts to satisfy itself of Amuny's guilt. These facts included evidence of Amuny's fingerprints, personal belongings, and transaction records found in the house on Sylvan Drive and testimony concerning Amuny's association with the other defendants. The district court did not err in accepting Amuny's guilty plea.

### C. Appellant Aaron Maxwell

The sole issue that Maxwell raises on appeal is whether the district court properly denied his motion to suppress evidence taken from the house on Sylvan Drive. After Maxwell's arrest and indictment, he sought to challenge the agents' search of the house. Maxwell contends that he had standing to contest this search and that the magistrate lacked probable cause to issue the warrant. In ruling on Maxwell's motion to suppress, the district court concluded that Maxwell had no standing to object to the search. The court also ruled that the agents' affidavit supporting their request for a search warrant contained sufficient facts to establish probable cause and to justify the magistrate's issuance of a search warrant.

█ We conclude that the district court correctly ruled that Maxwell lacked standing to contest the search of the house on Sylvan Drive. A defendant has the burden of establishing his right to contest a search or seizure of a person or property. *United States v. Salvucci*, 448 U.S. 83, 86, 100 S.Ct. 2547, 2549–50, 65 L.Ed.2d 619, 624–25 (1980). To establish standing to contest a search, the defendant must show that he had a "legitimate expectation of privacy" in the area searched. *Rakas v. Illinois*, 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387, 401 (1978). A defendant's legitimate presence on the searched premises, without more, is insufficient to establish standing. *Id.* at 142–43, 99 S.Ct. 430, 58 L.Ed.2d at 400–01.

 Under the standard the Supreme Court has set forth, Maxwell has no standing to contest the search of the house. The agents found no clothes or personal belongings of Maxwell's in the house. Maxwell's fingerprints were found only on a spiral-ring notebook in the house. The only evidence Maxwell presented to the district court in support of his contention were Maxwell's own affidavit and an affidavit of Royce Hebert. The district court's conclusion that Maxwell had no legitimate expectation of privacy in the house and that Maxwell therefore lacked standing to contest the search was correct. *See United States v. Briones-Garza,* 680 F.2d 417, 420 (5th Cir.), *cert. denied,* 459 U.S. 916, 103 S.Ct. 229, 74 L.Ed.2d 181 (1982). The probable cause issue is discussed in the next segment of our opinion.

### D. Appellant Royce Hebert

After his arrest and indictment, Hebert moved to suppress all evidence seized from the house on Sylvan Drive, which was his residence. Hebert argued that Agent Braziel's entry onto the premises without a warrant when Maxwell drove into the garage tainted the search of the house conducted after the agents had obtained a warrant. Because of this taint, Hebert contends, the district court was required to suppress the evidence seized in the search as a "fruit of the poisonous tree."

The district court agreed that Braziel's entry onto the premises was illegal. The court, however, refused to suppress the evidence, ruling that even absent Braziel's observations sufficient probable cause existed to justify the issuance of the search warrant. The court therefore used the remedy the Supreme Court authorized in *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and "purged the taint" by redacting the portions of the agents' affidavit that related to Braziel's illegal entry. On appeal, Hebert contends that the district court's redaction remedy was insufficient to purge the evidence of the taint of Braziel's illegal entry and that

the court should have suppressed the evidence.

A court should interpret a search warrant and its supporting probable cause in a realistic and commonsense manner. *United States v. Maestas,* 546 F.2d 1177, 1180 (5th Cir.1977). Viewing the search warrant involved here in this manner, we conclude that the warrant was clearly based on sufficient probable cause even without the evidence supplied by Braziel's illegal entry. The affidavit the agents submitted to the magistrate to support their request for a search warrant set out numerous facts in great detail; Agent Braziel's observations constitute only a small part of the information presented to the magistrate. The district court's redaction of the search warrant and the court's ruling on the admissibility of the evidence obtained in the search of Hebert's residence were correct.

For the reasons stated, we conclude that the district court's evidentiary rulings and the court's acceptance of the appellants' guilty pleas were correct. The judgment of the district court is therefore

AFFIRMED.