**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Nicolas ALVARADO GARCIA,**
**Defendant-Appellant.**

No. 85–1167
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 27, 1986.

Rey Perez, Crystal City, Tex., Rogelio F. Munoz, Uvalde, Tex., for defendant-appellant.

Helen M. Eversberg, U.S. Atty., Michael R. Hardy, James E. Bock, Asst. U.S. Attys., San Antonio, Tex., for plaintiff-appellee.

Before GEE, REAVLEY and HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge:

Nicolas Alvarado Garcia (Alvarado) appeals from his convictions for conspiracy to possess marijuana with intent to distribute and for possession of marijuana with intent to distribute in violation of 21 U.S.C. §§ 846 and 841(a)(1) respectively. We affirm.

## I.

Viewing the evidence in the light most favorable to the Government the facts are as follows: [1]

On the evening of December 7, 1984, Border Patrol Agents Mendoza and Saucedo were parked just west of the city limits of Carrizo Springs, Texas, at the intersection of Highways 2644 and 277, about twenty-seven miles from the Mexican border. The agents were in a marked border patrol car with lights on top, and both were wearing their official green uniforms. Area lights and the moon illuminated the intersection so that the agents could clearly see approaching vehicles.

Eagle Pass and El Indio are border towns. Eagle Pass lies to the north of El Indio and northwest of Carrizo Springs, and El Indio is due west of Carrizo Springs. Running through Carrizo Springs in a general north and south direction is Highway 83, well known to drug enforcement agents as a thoroughfare for illegal aliens and narcotics. Highway 277 is the only roadway leading from the border town of Eagle Pass to Carrizo Springs and it intersects with Highway 83. Highway 2644 is the only paved route connecting the border town of El Indio with Carrizo Springs.

Around midnight, agents Mendoza and Saucedo observed a dump truck traveling on Highway 277 from the direction of Eagle Pass turn onto Highway 2644, the highway to El Indio. Approximately two hours later, between 2:00 and 2:30 a.m., the agents saw the same dump truck return from El Indio and approach the intersections of Highways 277 and 2644. The truck started to turn east onto Highway 277 in the direction of Carrizo Springs, Highway 83, and the parked patrol car. Although there was no other traffic, the truck "hesitated there" for about a minute, and then, instead of turning east, it headed west on Highway 277, back towards Eagle Pass. As the truck turned the agents saw that a tarpaulin secured by ties covered the truck bed.

Agents Saucedo and Mendoza had been apprised by their agent-in-charge, Agent Caber, that dump trucks were being used to haul illegal aliens and narcotics out of the El Indio area. Although no trucks had

---

1. Federal appellate courts must sustain a verdict in a criminal case if there is substantial evidence, viewed in the light most favorable to the Government, to uphold a jury's or judge's decision of guilty. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *see Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942).

been apprehended in the six-month period following this report, a truck bed containing marijuana debris had recently been found in the El Indio area.

Agent Mendoza testified that he had seven years' experience in the border patrol in the Carrizo Springs area. His suspicions as to the truck were aroused by (1) his knowledge that dump trucks were being used to transport aliens and narcotics in this area, (2) his knowledge that there were no gravel or caliche pits in the area to explain the truck's presence, (3) the hour of night, (4) the proximity to the border, and (5) the truck's hesitation at the intersection. With the lights of the patrol car flashing, agents Mendoza and Saucedo followed the truck for approximately a quarter of a mile and then stopped it.

Agent Mendoza identified himself and asked the driver, Alvarado, if he was a U.S. citizen. Alvarado responded in the affirmative and produced his driver's license. He appeared nervous and stated that he was hauling gravel. Agent Mendoza stepped (or possibly climbed) onto the truck, shone a flashlight through a three-inch gap between the tarpaulin and the sidewall of the truck bed. Instead of gravel, the truck was filled with cardboard boxes sealed with masking tape. When Mendoza asked Alvarado what the boxes contained, Alvarado admitted that they contained marijuana, and turned around and put his hands behind his back to be handcuffed. Inside the cab the agents found two more cardboard boxes, similarly sealed. Upon opening one, the agents found that it contained what appeared to be marijuana. The agents arrested Alvarado and seized the truck and its contents. Upon arrival at the border patrol station Alvarado was informed of his rights for the first time. The agents then unloaded the truck and conducted an inventory search of the contents. All of the boxes contained marijuana.

Prior to trial, Alvarado filed a motion to suppress the evidence found in the truck he was driving. The district court denied this motion after conducting a special hearing. Alvarado then waived his right to a jury trial and stipulated that the trial court could use the evidence adduced at the suppression hearing, preserving, however, the right to challenge on appeal the court's ruling on his motion to suppress. Alvarado also stipulated that the substance seized by the authorities was marijuana. After finding Alvarado guilty, the court sentenced him to concurrent terms of five years on count one (21 U.S.C. § 846) and two years on count two (21 U.S.C. § 841(a)(1)), each with a special parole term of two years.

On appeal Alvarado contends that the stop and search of his truck were illegal. He further contends that the Government did not introduce sufficient evidence at trial of a conspiracy involving Alvarado, relying instead upon information brought to light at the suppression hearing and inadmissible at trial. The Government, for its part, suggests that a special parole term cannot be imposed upon conviction for a narcotics conspiracy and urges this Court to vacate the special parole term of two years imposed under count one.

## II.

### A. Legality of Stop

■ The fourth amendment applies to all seizures of the person including seizures that involve only a brief detention short of traditional arrest. *United States v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2578, 45 L.Ed.2d 607 (1975); *Davis v. Mississippi*, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); *Terry v. Ohio*, 392 U.S. 1, 16–19, 88 S.Ct. 1868, 1877–78, 20 L.Ed.2d 889 (1968). In the case of a roving patrol stop in a border area, the fourth amendment requires that "specific articulable facts" exist "together with rational inferences from those facts, that reasonably warrant suspicion" that the stopped vehicle was engaged in smuggling activities. *Brignoni-Ponce*, 422 U.S. at 884, 95 S.Ct. at 2582.

We find that there was ample justification for the stop. Reasonable suspicion to stop exists when "based upon the whole picture ... experienced Border Patrol

agents ... could reasonably surmise that the particular vehicle they stopped was engaged in criminal activity." *United States v. Cortez*, 449 U.S. 411, 421, 101 S.Ct. 690, 697, 66 L.Ed.2d 621 (1981). Agents Mendoza and Saucedo reasonably inferred from the absence of gravel-hauling activity in the area, the usual patterns of traffic there, the proximity to the border[2], information about recent smuggling activities involving dump trucks, Alvarado's attempt to evade them, and the large storage capacity of the dump truck that Alvarado was importing either aliens or contraband into the United States. *See Brignoni-Ponce*, 422 U.S. at 884–85, 95 S.Ct. at 2581–82 (all six of the above factors enumerated by the Court as examples of artculable facts which may legitimately give rise to a reasonable suspicion).

Alvarado maintains that any inferences of smuggling made by the border patrol agents is negated by the fact that, when Alvarado approached the intersection for the second time, he turned back towards Eagle Pass, his original starting place. He also maintains that he did not hesitate at the intersection or give any indication of an intention to proceed east towards Carrizo Springs. The district court noted that Alvarado's version of the facts differed from the agents' but decided that Alvarado's account was not credible. We are not competent to overturn a decision of a district court based purely on credibility choices, *Blunt v. Marion County School Board*, 515 F.2d 951 (5th Cir.1975); *N.L.R.B. v. J.M. Machinery Corp.*, 410 F.2d 587 (5th Cir.1969); we therefore uphold the district court's findings of fact. Furthermore, because we accept as true that Alvarado behaved at the intersection as though he would have turned towards Carrizo Springs but not for the agents' presence, we cannot in deciding whether there was a reasonable suspicion, accord significance to evidence that, in fact, Alvarado simply traveled back and forth between two border towns.

### B. Legality of the Search

■ With respect to his claim that he was unlawfully searched, Alvarado maintains that his admission that there was marijuana in the truck was made without benefit of a *Miranda* warning and consequently could not provide a lawful basis for his subsequent arrest and the search of his truck.[3]

Whether an individual is entitled to *Miranda* warnings depends on whether he is "in custody." *See Berkemer v. McCarty*, 468 U.S. 420, ___–___, 104 S.Ct. 3138, 3148–52, 82 L.Ed.2d 317, 332–36 (1984). This court approaches this issue on a case-by-case basis, *United States v. Henry*, 604 F.2d 908, 915 (5th Cir.1979); *United States v. Warren*, 578 F.2d 1058, 1070 (5th Cir. 1978); *rev'd in part on other grounds*, 612 F.2d 887 (5th Cir.) (en banc), *cert. denied*, 446 U.S. 956, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980); *United States v. Carollo*, 507 F.2d 50 (5th Cir.), *cert. denied*, 423 U.S. 874, 96 S.Ct. 143, 46 L.Ed.2d 105 (1975), employing a four factor test: (1) whether there was probable cause to arrest; (2) whether the

---

**2.** Alvarado correctly cites *United States v. Pacheco*, 617 F.2d 84, 86 (5th Cir.1980), for the proposition that this Court considers as vital but nondeterminative that the agent had reason to believe the vehicle came from the border. *Pacheco* makes clear that this element is missing when the stop occurs "a substantial distance from the border." There, the stop occurred on a paved four-lane highway 85 miles from Mexico. The opinion lists cases where stops occurring 50 or more miles from the border were held to be a "substantial distance." Here, the stop took place less than 30 miles from the border. The district court's finding that the border patrol agents had reason to believe that the dump truck had come from the border was not erroneous.

**3.** The facts of this case suggest a possibility that Agent Mendoza violated Alvarado's fourth amendment rights when he climbed onto the truck to look into a gap in the tarpaulin covering the truck bed, and that, as a result, Alvarado's confession was tainted. Alvarado did not raise this issue in his original brief. For equitable reasons peculiar to this case, we invited Alvarado to articulate in a supplemental brief his reasons for believing he had been searched illegally. As the supplemental brief also fails to raise this claim we deem the only issue before us relating to the legitimacy of Alvarado's confession to be the *Miranda* claim.

law enforcement officer had a subjective intent to hold the defendant; (3) whether the defendant had a subjective belief that his freedom was significantly restricted; and (4) whether the focus of the investigation was on the defendant at the time of questioning. *Henry,* 604 F.2d at 915–16; *Warren,* 578 F.2d at 1071. We consider each requirement of the test in sequence:

### (1) Probable Cause.

Probable cause for an arrest exists "if the facts and circumstances known to the officer warrant a prudent man in believing that an offense has been committed." *Henry v. United States,* 361 U.S. 98, 102, 80 S.Ct. 168, 171, 4 L.Ed.2d 134 (1959); *Stacey v. Emery,* 7 Otto 642, 97 U.S. 642, 24 L.Ed. 1035 (1878). Although the circumstances surrounding Alvarado's midnight run were sufficient to give rise to a reasonable suspicion of smuggling activities, they clearly did not amount to probable cause for an arrest. *See e.g., United States v. Smith* 557 F.2d 1206 (5th Cir.1977) (defendant matched smuggler's profile and turned pale during questioning), *cert. denied,* 434 U.S. 1073, 98 S.Ct. 1259, 55 L.Ed.2d 777 (1978).

### (2) Subjective Intent of Officer.

It is clear that Agents Mendoza and Saucedo had a subjective intent to restrict Alvarado's freedom. In the context of a border patrol stop, however, this limited restriction does not amount to "holding." Agents Mendoza and Saucedo were entitled to stop Alvarado, to question him about his citizenship status and to ask him to explain suspicious circumstances. *Brignoni-Ponce,* 422 U.S. at 881, 95 S.Ct. at 2580. If, after this limited and brief investigation, there was no probable cause for arrest the agents would have been required to let Alvarado go. There being no evidence that Agents Mendoza and Saucedo intended to subject Alvarado to anything other than a border patrol stop to confirm or dispel their suspicions, we find that this element is lacking.

### (3) Subjective Belief of Defendant.

Alvarado's freedom was sufficiently restricted to bring him under the protection of the fourth amendment. In determining whether his liberty was so restricted as to entitle him to the protections of *Miranda,* however, we must measure the potential for unreliable, self-incriminating statements created by his encounter with the agents. We do not believe that the limited questioning permitted during a border patrol stop implicates the concerns about coercion and forced testimony which inspired the *Miranda* decision. *See Berkemer v. McCarty,* 468 U.S. 420, ___, 104 S.Ct. 3138, 3150, 82 L.Ed.2d 317, 334 (1984).[4] Agent Mendoza requested to see Alvarado's driver's license and asked him what was in the truck. This questioning involved neither threats nor promises and was not "reasonably likely to evoke an incriminating response...." *See Rhode Island v. Innis,* 446 U.S. 291, 301–02, 100 S.Ct. 1682, 1689–90, 64 L.Ed.2d 297 (1980). We find that the intrusion on Alvarado's freedom of movement was minimal and did not give rise to a significant risk of coerced testimony. We therefore find this element to be lacking.

### (4) Focus on the Defendant

The rule in this circuit is that if none of the other factors are present, the fact that the investigation is focused upon the defendant is insufficient to render the interrogation custodial. *United States v. Warren,* 578 F.2d at 1072; *United States v. Carollo,* 507 F.2d at 52–53. We therefore do not consider this issue.

■ Our consideration of these four factors lead us to the conclusion that Alvarado was not "in custody" immediately following the stop and therefore was not entitled to a *Miranda* warning. Alvarado's admission that there was marijuana in the

---

**4.** There is dicta in *Berkemer v. McCarty,* 468 U.S. at ___–___, 104 S.Ct. at 3150–51, 82 L.Ed.2d at 334–35, to the effect that a person subjected to a *Brignoni-Ponce* stop is not "in custody" for the purposes of *Miranda.* We believe that this pro-nouncement is in accord with the analysis we undertake today. In essence each of the four factors inquires whether the defendant was subjected merely to a "stop" or whether he suffered a more drastic curtailment of his liberties.

truck was not tainted and established probable cause for his arrest. The search of the cartons in the cab was permissible as a contemporaneous incident of that arrest, *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), and the inventory search of the truck bed was valid under the holding of *Florida v. Meyers*, 466 U.S. 380, 104 S.Ct. 1852, 80 L.Ed.2d 381 (1984).

### III.

■ Alvarado's second assignment of error is that the Government failed to introduce sufficient evidence to uphold his conviction under count one for conspiracy to possess marijuana with intent to distribute. Alvarado asserts that at trial the Government did not develop any line of questioning concerning the existence of a conspiracy and adds that the district court must have relied upon his testimony at the suppression hearing in finding that a conspiracy existed. Alvarado maintains that because he invoked the protective shield of *Simmons v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968), his testimony at the suppression hearing cannot be used against him at trial.

In *Simmons* the Supreme Court held that "when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt *unless he makes no objection.*" 390 U.S. at 394, 88 S.Ct. at 976 (emphasis supplied); *see Pedrero v. Wainwright*, 590 F.2d 1383, 1388 n. 3 (5th Cir.) (had defendant testified at arraignment, his testimony would not have been admitted at trial "over his objection"), *cert. denied*, 444 U.S. 943, 100 S.Ct. 299, 62 L.Ed.2d 310 (1979).

Prior to Alvarado's brief bench trial, the following colloquy took place:

Prosecutor:

Counsel can correct me if I am wrong. This is my understanding, that the defendant is continuing to pursue his plea of not guilty as to both counts of the indictment. However, we have agreed to stipulate to the testimony that this Court heard in connection with the Motion to Suppress, in connection with that not guilty plea, and for the Court to determine guilt or innocence based on that....

Defense Counsel:

That is correct. I am here with the defendant, ... and that is the stipulation we have reached.

Defense counsel then assured the court that Alvarado understood the stipulation. The court then addressed Alvarado who indicated that he both understood and agreed to the stipulation. Defense counsel informed the court that he had "advised [his] client ... to agree to stipulate that the evidence adduced at the pre-trial from his standpoint is evidence that he will agree that we would introduce tomorrow should a trial take place."

By choosing to enter into the stipulation, Alvarado's position is inconsistent with the assertion of a *Simmons*-based objection that would have sheltered his suppression hearing testimony from consideration as substantive evidence at trial. As in *United States v. Zurosky*, 614 F.2d 779 (1st Cir. 1979), *cert. denied*, 446 U.S. 967, 100 S.Ct. 2945, 64 L.Ed.2d 826 (1980), Alvarado and his attorney

agreed that [the defendant's suppression hearing] testimony could be considered [during his subsequent bench trial]. This was more than a failure to object; it was a stipulation and, as such, the testimony became part of the evidence. Under these circumstances, the strictures of *Simmons* do not apply. *See U.S. v. Polk*, 574 F.2d 964 (8th Cir.1978), *cert. denied*, 439 U.S. 849, 99 S.Ct. 150, 58 L.Ed.2d 151 (1979) (not error for district court to consider at bench trial defendant's suppression hearing testimony where counsel agreed to its inclusion at trial).

614 F.2d at 794; *see also Brookins v. United States*, 397 F.2d 261, 262 (5th Cir.) (not only no objection, but express waiver of an argument by stipulation), *cert. denied*, 393

U.S. 952, 89 S.Ct. 377, 21 L.Ed.2d 364 (1968).

The stipulation is clear and unambiguous on its face. It was relied upon by the district court and by the Government. The parties to a stipulation are bound by the terms actually agreed upon, *see United States v. McKinney*, 758 F.2d 1036, 1047 (5th Cir.1985); *Rice v. Glad Hands, Inc.*, 750 F.2d 434, 438 (5th Cir.1985), and the agreement is binding until modified, *Thrash v. O'Donnell*, 448 F.2d 886, 889 n. 7 (5th Cir.1971).

IV.

In *Bifulco v. United States*, 447 U.S. 381, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980) the Supreme Court held that 21 U.S.C. § 846 did not authorize the imposition of a special parole term. Accordingly, we vacate the special two year parole term imposed upon Alvarado on count one.

For the reasons discussed above, we AFFIRM the judgment of conviction on counts one and two and we VACATE the special two year parole term imposed on count one and direct the district court to enter an amended judgment to such effect.