UNITED STATES of America,
Plaintiff-Appellee,

v.

Mary Dangerfield BENGIVENGA,
Defendant-Appellant.

No. 86–2394.

United States Court of Appeals,
Fifth Circuit.

Feb. 23, 1987.

Frank M. Garza, Canales & Associates, Corpus Christi, Tex., for defendant-appellant.

Henry K. Oncken, U.S. Atty., Susan L. Yarbrough, James R. Gough, Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before CLARK, Chief Judge,
GOLDBERG and GEE, Circuit Judges.

GEE, Circuit Judge:

Mary Dangerfield Bengivenga challenges the introduction of evidence the police elicited from her before giving *Miranda* warnings. Because we find the police had probable cause to arrest Ms. Bengivenga before they questioned her, we reverse her conviction and order the tainted evidence suppressed.

Ms. Bengivenga's present tribulations began one night shortly after midnight at the border checkpoint seven miles south of Falfurrias, Texas, on U.S. Highway 281.[1] The commercial bus on which she and her female companion were traveling was stopped at the checkpoint by Border Agents Santana and Ramos. Agent Santana boarded the bus for a routine check of the passengers' citizenship. This questioning revealed that all of the ten to fifteen travelers were in the country legally. During this initial questioning, Ms. Bengivenga and her companion volunteered that they were bound for Alice, Texas, a small town 50 miles north of the checkpoint. Agent Santana then left the bus to check the luggage bins for illegal aliens. In the front compartment he found among the seven or eight pieces of luggage three suitcases that smelled strongly of marijuana. Agent Ramos agreed with him that the

three similar suitcases contained marijuana. They removed the suitcases and checked the baggage tags. The suitcases had no identification, but the baggage claims indicated that they were checked through to Alice.

During their inspection of the luggage, Ms. Bengivenga and her friend peered nervously out the window and watched the agents' actions closely. The agents conferred briefly, and Ramos testified that Santana told him that those two women were the only passengers traveling to Alice.[2] Agent Ramos then reboarded the bus and questioned two males sitting in front of the two women as to their destination. They replied that they were going to San Antonio. Agent Ramos then asked the women their destination, and they answered "Alice." He next asked them if they had any luggage, which they denied. With this, he asked them to step off the bus.

After leaving the bus, in response to further questions, they specifically denied that the marijuana-laden suitcases were theirs. Agent Ramos escorted the two into the trailer, while the bus remained at the checkpoint. Both women were very nervous and repeatedly denied ownership of the suitcases. He asked them to produce their bus tickets. When Ms. Bengivenga opened the envelope containing her ticket, Agent Ramos noticed baggage claim stubs in it. He asked to see the stubs. They matched the claim tags on the suitcases, and he then placed the two women under arrest and advised them of their constitutional rights. The entire questioning in the trailer took only about a minute and a half.

■ The appellant argues that she was entitled to *Miranda* warnings before the agents questioned her in the trailer. The question is whether she was in custody

---

1. This checkpoint is recognized as the functional equivalent of the border. *See United States v. Salinas*, 611 F.2d 128 (5th Cir.1980).

2. Agent Ramos testified that it was his practice to question passengers as to both citizenship and destination, and he assumed that Agent Santana had done so. Agent Santana testified

that he did not ask the passengers their destinations, but that the women and a few others volunteered this information. In any event, based on information from Agent Santana, Agent Ramos believed that the two women were the only passengers bound for Alice.

during the interrogation. *Berkemer v. McCarty*, 468 U.S. 420, 435, 104 S.Ct. 3138, 3148, 82 L.Ed.2d 317, 331 (1984). The answer depends on the result of applying a four-factored test: (1) whether there was probable cause to arrest; (2) whether the law enforcement officer had a subjective intent to hold the defendant; (3) whether the defendant had a subjective belief that her freedom was significantly restricted; and (4) whether the focus of the investigation was on the defendant at the time of questioning. *United States v. Alvarado Garcia*, 781 F.2d 422, 425–26 (5th Cir.1986).

■ We first note that of the four factors, "the most compelling is whether or not the focus of the investigation has finally centered on the defendant." *Brown v. Beto*, 468 F.2d 1284, 1286 (5th Cir.1972) (footnote omitted); *see United States v. Ledezma-Hernandez*, 729 F.2d 310, 313 (5th Cir.1984). The agents candidly admitted that they had focused their investigation on Ms. Bengivenga and her friend when they discovered that the suitcases were bound for Alice. Focus in the absence of the other three factors, however, is "insufficient to render the interrogation custodial." *Alvarado Garcia*, 781 F.2d at 426. In this case, however, the conclusion is unavoidable that the officers had probable cause to arrest the appellant before the interrogation in the trailer commenced.

"Probable cause to arrest exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir.1985). The situation here presents a twist on the ordinary probable cause case, which revolves around the adequacy of police knowledge of a crime. Here the border agents were in no doubt that a crime was being committed; the only question was which passengers were committing it.

We must look at the totality of the circumstances. *Id.* Agent Ramos knew that the three suitcases were checked through to Alice. He believed that only two of the

ten or fifteen passengers were headed for Alice, a small town up the road, and he knew that these two women appeared nervous. "In dealing with probable cause … we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians act." *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879, 1890 (1949); *see also United States v. Preston*, 608 F.2d 626, 632 (5th Cir.1979) (quoting *Brinegar*), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980). In these circumstances, we must conclude that Agent Ramos had probable cause to arrest the appellant before he questioned her in the trailer.

■ The existence of probable cause to arrest in addition to the focused investigation on Ms. Bengivenga renders her answers to Agent Ramos's questions the product of custodial interrogation. She was entitled therefore to the protection of *Miranda* warnings before the agent questioned her. Her answers to the questions and the production of her ticket and baggage claim stubs must be suppressed as the product of her unconstitutional interrogation. We therefore REVERSE her conviction.

CLARK, Chief Judge, dissenting:

With deference, I respectfully dissent. I cannot conclude that the record requires that we reverse the district court's factual determination that Agent Ramos did not have probable cause to arrest Bengivenga before he took a minute and a half to determine that she had lied about having checked luggage on the bus. It was entirely appropriate, in my view, for Agent Ramos to take an extra moment to pursue the strongest clue he had by questioning the only two passengers bound for the destination shown on the luggage that smelled of marijuana. It is both plausible and probable, to my mind, for him to think that he needed to confirm that others had not sent the luggage to this small town with the intent that confederates would claim it, or to think that another passenger might have

covered his association with the bags by purchasing a ticket to another destination.

Apprehending dope smugglers is not an easy game or one played by logical rules. Agents set to this task frequently find their best efforts thwarted when they make arrests based on what courts later say was less than probable cause. I simply cannot fault Agent Ramos or the district court for holding the belief that I share—until Bengivenga's lie was revealed, a reasonable probability existed that the marijuana-laden suitcases could be in the control of others.

Because I would affirm, I dissent.