**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose G. BUSTAMANTE–SAENZ, Santos
Lopez–Orosco, and Jose Luis Sotelo,
Defendants–Appellants.**

No. 89–1369
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Jan. 31, 1990.

with intent to distribute, 21 U.S.C. § 841(a)(1). Santos Lopez was convicted of a separate count of possession of marijuana with intent to distribute. They appeal their convictions, alleging various grounds of error. We affirm.

## I

### A.

On November 1, 1988, Jim Atwater, an Odessa, Texas, police officer, received a tip from a reliable informant that Jose Bustamante planned to enter the United States from Mexico to transport narcotics from Presidio, Texas, to Odessa, Texas. Atwater relayed this information to William Upchurch, a special agent with the United States Customs Service. On that same day, Gordon Ridings, a U.S. customs officer, observed Bustamante enter the United States from Mexico at the Presidio, Texas port of entry, in a white Pontiac.

Also on November 1, 1988, Tom Finley, an agent with the Permian Basin Drug Task Force, informed Upchurch that he had received a tip from a second informant that two individuals, Pedro Garcia and Pedro Valdez, were at the ranch of a known drug smuggler, had specially outfitted a yellow, two-door Cadillac to transport narcotics and had left Kermit, Texas, to pick up marijuana in Presidio. Finley partially confirmed this information when he observed the Cadillac at the drug smuggler's ranch on the same day.

From November 1 through November 5 agents observed the yellow Cadillac parked at a residence in Presidio.

On November 3, Wayne Wiemers, a special agent with the United States Border Patrol in Marfa, Texas, called Upchurch and warned him to look for a grey Lincoln Mercury, Texas license 941–KZK. That vehicle had been posted for special scrutiny because it was suspected of having been used previously in connection with drug trafficking. Border Patrol Agent Tom Finney stopped and searched the grey Mercury, occupied by Garcia and Valdez, at the

Ricardo R. Alvarado, Midland, Tex., for Bustamante–Saenz.

Allen R. Stroder, Odessa, Tex., for Lopez–Orosco.

Tony Chavez, Chavez & Garcia, Odessa, Tex., for Jose Luis Sotelo.

Robert J. Erickson, U.S. Dept. of Justice, Washington, D.C., LeRoy Morgan Jahn, Asst. U.S. Atty., San Antonio, Tex., for U.S.

Before POLITZ, GARWOOD and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Jose Bustamante and Jose Sotelo were convicted of conspiracy to possess marijuana with the intent to distribute, 21 U.S.C. § 846, and with possession of marijuana

Marfa Checkpoint. No contraband was discovered.

On November 4, Agent Finney observed Garcia driving the grey Mercury to the Balia Motel in Presidio. Around 4:00 p.m. on November 4, Upchurch saw Garcia meeting Juan Lopez (father of defendant Santos Lopez) in vehicles across from a supermarket in Presidio. Garcia again drove the grey Mercury. At 10:00 p.m., Upchurch and Ridings observed the grey Mercury in front of the Balia Motel.

At 1:00 a.m. on November 5, Ridings observed Bustamante arrive at the Balia Motel in a white Pontiac and enter the room registered to Garcia. At 7:00 p.m. that day, Ridings observed the grey Mercury parked in front of a supermarket in Presidio. At 10:00 p.m., the Mercury left the supermarket. Ridings followed the Mercury and stopped it five miles north of Presidio. The car was driven by Garcia. Ridings obtained Garcia's consent to search the trunk, but discovered no contraband. At the same time, Ridings radioed a request to the Department of Public Safety to stop a black pickup truck that had been trailing the Mercury. Trooper Sheffield stopped the pickup, driven by Holguin. Bustamante was a passenger in the pickup. Sheffield searched the vehicle but found no contraband.

On November 6, Finley received information that the yellow Cadillac was loaded with narcotics in Presidio and ready to return to Kermit. Using aerial surveillance, Ridings located the car north of Presidio, on a ranch owned by Lopez's father. Ridings testified that he flew over the Lopez ranch because he had seen Lopez in the company of those suspected of hauling marijuana. Shortly thereafter, Ridings and others set up surveillance on the highway bordering the Lopez ranch.

In the pre-dawn of November 7, three individuals in the same black pickup truck in which Bustamante had been observed two days before drove onto the ranch and stopped near the yellow Cadillac. A few minutes later, both vehicles left the ranch: the car driving north toward Kermit and the truck, operating without lights and oc-

cupied by two persons, driving south toward Presidio. Upchurch and Finley stopped the Cadillac, and smelling the odor of marijuana, they searched the vehicle and found ninety-seven pounds of marijuana in a false compartment below the front seat. They arrested Sotelo, the driver of the Cadillac. Other customs officers stopped the pickup truck and arrested its occupants, Bustamante and Holguin. A search of the vehicle revealed no drugs.

The officers returned to the ranch and, after summoning Lopez from the house, arrested him. With Lopez's consent, the officers conducted a quick search of the house for other individuals. Later that morning, the officers, with Lopez's consent, returned to the ranch, searched his house and found, in addition to marijuana residue, certain articles used to process marijuana, i.e., a hydraulic press, scales, bondo filler, rolls of plastic wrap and duct tape. In searching the grounds around the ranch, they also found two duffel bags containing eighty-four pounds of marijuana, which were located approximately one mile from the Lopez ranch. Foot tracks on the road near where the duffel bags were found were positively identified as those of Lopez by using an imprint taken from his shoes.

Meanwhile, Bustamante and Lopez, who had been taken to the Presidio port of entry, but who had not been taken before a magistrate, made inculpatory statements while in custody. Bustamante confessed that the marijuana in the yellow Cadillac was his and was being transported to Odessa. Lopez admitted that he knew of the duffel bags found along the road near his father's ranch, although he denied they belonged to him.

### B.

Sotelo, Bustamante, Lopez and Holguin were charged with conspiracy to possess marijuana with the intent to distribute it (21 U.S.C. § 846) (count 1) and possession with the intent to distribute marijuana (21 U.S.C. § 841(a)(1)) (count 2). Additionally, Lopez was charged with a separate count

of possession with intent to distribute (21 U.S.C. § 841(a)(1)) (count 3).

On March 6, 1989, following an evidentiary hearing, the district court denied the appellants' motions to suppress the post-arrest inculpatory statements and the physical evidence that had been seized. On April 19, 1989, the court issued its findings of fact and conclusions of law denying the appellants' motion to suppress.

After the appellants waived their rights to a jury trial, the district court found Bustamante and Sotelo guilty on counts 1 and 2; Lopez guilty on count 3, and Holguin guilty on count 2. The court sentenced Bustamante to concurrent terms of forty-four months, to be followed by a three-year term of supervised release. It sentenced Sotelo to concurrent terms of twenty-one months to be followed by a three-year term of supervised release. The court sentenced Lopez to a term of twenty-seven months to be followed by a two-year term of supervised release.

## II

### A.

 Sotelo appeals his conviction, arguing that there was no probable cause to stop or search the Cadillac, and that the narcotics discovered pursuant to the warrantless arrest should have been suppressed. We reject this contention. "A warrantless search of an automobile is permissible where ... officers have probable cause to believe the vehicle contains contraband." *United States v. Prati*, 861 F.2d 82, 85 (5th Cir.1988). The agents had probable cause to believe that the yellow Cadillac contained illegal drugs: agent Finley had received information on November 1, 1988, that such a car had left Kermit, Texas to pick up a load of narcotics from Presidio, and agent Finley later spotted the vehicle at a ranch owned by a known drug dealer. On the day before the arrest, Finley received information that the Cadillac had been loaded with marijuana and would return to Kermit either that night or during the early morning hours the next day. The Cadillac was parked at the Lopez ranch, which was located in an area notorious for drug smuggling and was owned by a man who had associated with persons believed to be involved in drug trafficking. The black pickup truck that had previously been associated with Bustamante and Garcia arrived at the Lopez ranch, parked near the Cadillac, remained for a few minutes, and then both vehicles departed. Finally, after stopping the car, which had turned north towards Kermit as the informant had said it would, Finley and Upchurch smelled the odor of marijuana coming from it. Because, under the totality of the circumstances, the officers had probable cause to believe that the vehicle contained contraband, the warrantless stop and search of the vehicle was lawful.

 Sotelo argues, however, that because the agents had monitored the movement of the yellow Cadillac for several days before November 7, there existed no exigent circumstances to stop it at that time, and thus their failure to obtain a warrant is fatal. The Supreme Court has rejected such an argument:

> Exigent circumstances with regard to vehicles are not limited to situations where probable cause is unforeseeable and arises only at the time of the arrest. The exigency may arise at any time, and the fact that the police might have obtained a warrant earlier does not negate the possibility of a current situation's necessitating prompt police action.

*Cardwell v. Lewis*, 417 U.S. 583, 594–95, 94 S.Ct. 2464, 2471, 41 L.Ed.2d 325 (1974) (citations omitted). We have already noted that the agents had probable cause to stop the yellow Cadillac. Additionally, these circumstances, which had been developing over the week, culminated in a manner requiring prompt police action: the car, reasonably believed to be transporting illegal drugs, was in the process of transporting them to their point of destination. Thus the agents' failure to obtain a warrant did not violate the fourth amendment.

### B.

 Bustamante argues that there was no probable cause to arrest him.

"Probable cause to arrest exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a person of reasonable caution to believe an offense has been or is being committed." *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir.1985). In the first place, the officers had received reliable information a week earlier that Bustamante was entering the United States to make a delivery of drugs from Presidio to Odessa. The officers received a second tip that Garcia and Valdez were driving a yellow Cadillac to Presidio to be used in such a venture. Subsequent investigation confirmed that all three men and the Cadillac were in Presidio, and linked Bustamante to Garcia on two separate occasions. On the second of these occasions, Bustamante was riding in a black pickup truck.

After receiving another tip that the Cadillac had been loaded with marijuana and would depart for Kermit within the next twenty-four hours, the officers began surveillance at the Lopez ranch where the Cadillac had been located. Then, in the early morning of November 7, Ridings, the arresting officer, who had been working on the case all week, observed three individuals arrive at the Lopez ranch in a black pickup truck. The truck was the same truck in which Bustamante had been seen two days earlier. The truck entered the Lopez ranch and parked near the yellow Cadillac that was the subject of the week-long surveillance and was reasonably believed to be involved in a drug transaction at that moment. A couple of minutes later, both vehicles departed the ranch. The pickup drove for a short time before turning on its lights, arousing Officer Ridings' suspicion. At this time only two individuals—who turned out to be Bustamante and Holguin—were observed inside the truck. Thus, it was reasonable for Ridings to believe that the missing passenger was the driver of the yellow Cadillac. Under these circumstances, probable cause clearly existed to believe Bustamante was involved in narcotics-related offenses.

## C.

■ Lopez challenges his conviction on two grounds. First, he argues that his inculpatory statement and evidence seized at the ranch were the fruits of a warrantless arrest and search and should have been suppressed. Specifically, he contends that the district court's failure to suppress such evidence contravenes *Payton v. New York*, 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), in which the Supreme Court held that "absent exigent circumstances, the state may not enter a suspect's home to make a warrantless arrest." *Payton*, however, is not applicable under the facts of this case. The police did not enter Lopez's home in order to arrest him, but rather waited until he emerged from the house to do so. Such arrests do not violate the fourth amendment. *United States v. Carrion*, 809 F.2d 1120, 1128 (5th Cir. 1987); *see also Steagald v. United States*, 451 U.S. 204, 221 n. 14, 101 S.Ct. 1642, 1652 n. 14, 68 L.Ed.2d 38 (1981). Lopez's later incriminating statement and the imprints made from his shoes were therefore not tainted by his arrest.[1]

■ Second, Lopez argues that there is insufficient evidence supporting his conviction for possession of marijuana with intent to distribute. The government must show beyond a reasonable doubt that Lopez possessed the eighty-four pounds of marijuana found in the two duffel bags, that he intended to distribute the marijuana, and that he did these two things knowingly. *United States v. Moreno–Hinojosa*, 804 F.2d 845 (5th Cir.1986). Possession may be actual or constructive and proved by circumstantial evidence. *Id.*

We must review the evidence in the light most favorable to the government, and af-

---

1. We note that the district court made a finding, which is unchallenged on this appeal and appears to be adequately grounded in the evidence, that except in the interior of the ranch house, Lopez had no proprietary or privacy interest in the ranch in question, which belonged to his father. Thus, Lopez lacked standing to challenge the officers' initial warrantless entry onto the ranch property to the point at which they arrested him after he exited the house pursuant to their call.

firm if substantial evidence supports Lopez's conviction. We must reverse if a reasonable jury must have had a reasonable doubt about Lopez's guilt. *Id.*

We hold that the evidence adduced at trial clearly supports Lopez's conviction. Lopez had constructive possession of the marijuana. He had been living at the ranch near where the duffel bags were found for four to six months before his arrest and was the only person present on the property when the arrest occurred. The ranch had a full scale marijuana processing plant on its grounds. The bags were found stashed about one mile from the ranch. Most important, all the human footprints along the road where the duffel bags containing the eighty-four pounds of marijuana were discovered were determined to be those of Lopez. Lopez admitted to knowing that the duffel bags were there even though he denied ownership of them. Finally, given the circumstance of the sizeable quantity of marijuana in the bags, we can only conclude that he intended to distribute the drugs. *Id.* at 847 n. 2.

### III

Bustamante and Lopez also challenge their convictions on the ground that their confessions should have been suppressed because they were not promptly taken before a magistrate in accordance with Fed.R.Crim.P. 5(a). Federal Rule of Criminal Procedure 5(a) provides in relevant part: "An officer making an arrest ... shall take the arrested person without unnecessary delay before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041." 18 U.S.C. § 3501(c) provides that "a confession ... shall not be inadmissible solely because of delay in bringing a person before a magistrate ... if such confession was made or given by such person within six hours immediately following his arrest...." This time limitation is inapplicable, however, if the delay in presentment is "reasonable considering the means of transportation and the distance to be trav-

eled to the nearest available ... magistrate." *Id.*

Bustamante was arrested at approximately 4:30 a.m. on November 7 and, along with co-defendant Holguin, taken by agent Ridings to the Presidio port of entry. Ridings read the defendants their *Miranda* rights in Spanish while en route. On arrival at the port of entry, agent Tom Gill read Bustamante his *Miranda* rights in English, and sought to interrogate him. Bustamante, however, declined to answer pertinent questions. Shortly after agent Gill had sent out for lunch, Gill received a note from Bustamante indicating that he wished to talk. At 2:00 p.m., after Bustamante had eaten lunch, Gill took Bustamante into the office and asked him what he wanted to talk about. Bustamante asked, "What do you want to know?" Gill indicated that he was interested in knowing the names of those to whom the drugs belonged and where they were going. Bustamante replied that the marijuana in the yellow Cadillac belonged to him and that he was attempting to transport it to Odessa.

Lopez was arrested at approximately 5:30 a.m. on November 7 and was taken to the Presidio port of entry. At about 1:15 p.m. that day, Lopez admitted to Ridings that he had seen the two duffel bags containing the eighty-four pounds of marijuana at about 1:15 p.m. on November 6, and that he intended to wait until his father returned home to inquire about them. At trial both defendants filed motions to suppress their confessions. Only Bustamante, however, argued that his confession should be suppressed, under Rule 5(a), on grounds of unnecessary delay in bringing him before a magistrate. The district court held that both defendants had "voluntarily, knowingly, and intelligently" made their inculpatory statements after having been given their *Miranda* warnings, and denied their motions to suppress.

We first note that because Lopez failed to raise a Rule 5(a) objection at trial, he has failed to preserve error on appeal. *United States v. Figueroa*, 818 F.2d 1020, 1025 (1st Cir.1987). Counsel for Bustamante timely raised Rule 5(a) grounds for sup-

pression, and therefore we proceed to evaluate his claim.

We hold that under the facts and circumstances of the instant case, the delay in presenting Bustamante to the magistrate does not support the suppression of his confession. Once a defendant has been tried and convicted, delay in bringing him before a magistrate is not reason to set aside the conviction unless the defendant can show that he was prejudiced by the delay. *United States v. Causey*, 835 F.2d 1527, 1529 (5th Cir.1988). Bustamante has demonstrated no prejudice. There is nothing in the record before us that suggests that Bustamante's presentment before a magistrate was delayed for the purpose of interrogation or for any other malevolent reason. Nor is there any evidence of lengthy, hostile, or coercive interrogation that could have prejudiced Bustamante. *See United States v. Rubio*, 709 F.2d 146 (2d Cir.1983). Indeed, Bustamante does not even suggest that the delay tainted the voluntariness of his confession or that there was a causal connection between the delay and his confession. In any event, "delay is 'simply one factor which must be considered along with other factors in determining voluntariness.'" *United States v. Gorel*, 622 F.2d 100, 104 (5th Cir.1979), *cert. denied*, 445 U.S. 943, 100 S.Ct. 1340, 63 L.Ed.2d 777 (1980).

Although Bustamante was detained more than thirty hours before he was presented to a magistrate, the government proffered an explanation for the delay: no magistrate was available in Presidio where the defendants were arrested on November 7. The nearest magistrate, the one to whom the defendants were ultimately presented, was in Pecos, approximately 140 miles away.

Thus here, where there is no evidence to support a finding that the delay was for the purpose of obtaining a confession, there is no evidence that the delay had a coercive effect on the confession, there is no causal connection between the delay and the confession, and the confession was otherwise voluntarily given, we hold that the defendant has not shown prejudice by the delay.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.