UNITED STATES of America

v.

**William Robert RICH.**

**Cr. No. A–91–CR–037.**

United States District Court.
W.D. Texas,
Austin Division.

April 28, 1992.

**1164**

James Blankinship, Asst. U.S. Atty., Austin, Tex., for plaintiff.

R. James George, Austin, Tex., for defendant.

## ORDER

NOWLIN, District Judge.

Before the Court are Defendant Rich's Motion to Suppress Evidence, filed July 22, 1991, and Supplemental Motion to Suppress Evidence, filed April 13, 1992. On April 23, 1992, the Court conducted a hearing on these motions. Having reviewed and considered the motions, the testimony, and the oral and written arguments of counsel, this Court is of the opinion that the Motion to Suppress should be GRANTED.

On April 2, 1991, an the Grand Jury charged, by indictment, the Defendant William Robert Rich with one offense. Count One charges Defendant Rich with possession with intent to distribute less than 50 kilograms of marijuana, in violation of 21 U.S.C. § 841(a)(1). The alleged offense occurred on or about January 16, 1992. This case is currently set for a jury trial on May 4, 1992.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Initially, the Defendant has filed a fairly basic motion to suppress evidence because such evidence was illegally obtained because of the defendant's lack of consent. The government has filed a one paragraph response that states that the trooper had the defendant's consent to search and, therefore, legally obtained the evidence. Based upon the evidence and the law, this Court finds that the scope of the defendant's consent to search the truck did not extend to the luggage or other containers inside the vehicle.

Also, from the facts alleged by the Government, it does not appear that the trooper had probable cause to believe that the defendant had drugs or any other type of contraband. Because the search was performed before the arrest, the Government cannot claim that the search was permissible pursuant to a valid arrest.[1]

---

1. Because this decision can be made clearly based upon the scope of consent issue, this Court does not decide the detention and possible coercion issues raised by the defendant.

In the present case, the Government has asserted the following facts. At approximately 11:35 p.m. on the night of January 16, 1991, the trooper made a completely routine traffic stop of the defendant because the license plate light of the defendant's truck was not functioning. The officer requested that the defendant step out of his vehicle and had the defendant stand next to the trooper's patrol car, parked approximately eight feet behind the defendant's truck. As requested, the defendant handed his driver's license to the trooper. The trooper attempted to run a criminal history check, a warrant check, and a routine license check on the defendant, but the trooper was informed that the computers were down and that no information could be obtained on any of the requested checks. Meanwhile, the defendant, with his hand shaking somewhat, handed over his vehicle insurance verification to the trooper, as required by state law.

The officer then asked the defendant if the defendant had any narcotics or weapons in the vehicle, and the defendant replied negatively. Next, the officer asked if he "could look into the truck," and the defendant did not reply. Although the trooper testified that the defendant could hear him, the trooper's report states, "This was the first time that he did not hear me." The trooper walked towards the truck, but turned around and again asked, "Can I have a look in the truck?" The defendant did not answer. The trooper walked up to the driver's door of the truck, but, once again, the trooper returned to where the defendant was standing, and the trooper made the same request to "look into the truck" with the additional admonition that the defendant needed to respond "yes or no." After this third request was made, the defendant responded, "Yes." During this time, the defendant was standing next to the patrol car.

Next, the officer unlocked the doors to the truck and soon proceeded to pull a suitcase out from behind the front seat. After placing the suitcase on the ground, the officer unzipped the suitcase. Upon opening the suitcase, the trooper noticed what he believed to be was marijuana. The officer then returned the suitcase to the truck and walked back to where the defendant was standing. When the officer had reached the rear of the truck, the defendant stated, "You got me." The officer then advised the defendant of his rights.

■ A warrant is not necessary when the facts establish that the defendant voluntarily consented to the search. *See United States v. Harrison*, 918 F.2d 469, 473 (5th Cir.1990). The issue of voluntary consent is a question of fact to be determined from the totality of the circumstances. *See id.*

■ The Government has the burden of proving voluntary consent in this case by the required preponderance of the evidence standard set forth by the Fifth Circuit. *See United States v. Hurtado*, 905 F.2d 74, 76 (5th Cir.1990) (en banc). The Fifth Circuit has announced five factors that should be assessed in determining the voluntariness and effectiveness of a defendant's consent to a warrantless search: (1) the voluntariness of the defendant's custodial status; (2) the presence of coercive police procedures; (3) the extent and level of the defendant's cooperation with the police; (4) the defendant's awareness of his right to refuse consent; (5) the defendant's education and intelligence; (6) the defendant's belief that no incriminating evidence will be found. *See United States v. Yeagin*, 927 F.2d 798, 800 (5th Cir.1991).

■ In the present action, the voluntariness of the defendant's custodial status is questionable because of the trooper's retention of the defendant's driver's license and insurance materials. The repeated requests to "look in" the defendant's car also tend to demonstrate coercion by the trooper, as well as the statement during the third request that the trooper needed a yes or no answer. Overall, the defendant appeared to be fairly cooperative with the trooper, until the trooper requested permission to look in the vehicle. At no time during the encounter did the trooper inform the defendant of his right to refuse consent. The defendant apparently possesses average intelligence. It is not clear

whether the defendant believed any incriminating evidence would be found. This last factor seems to turn upon the scope of consent issue.

■■■ Consensual searches are approved because it is reasonable for the police to conduct a search once they have been permitted to do so. *See Florida v. Jimeno,* — U.S. —, —, 111 S.Ct. 1801, 1803, 114 L.Ed.2d 297 (1991) (citation omitted). The scope of the consent is generally defined by its express object. *Id.,* — U.S. at —, 111 S.Ct. at 1804. A suspect may limit as he or she chooses the scope of a consensual search. *Id.* If a suspect's consent would reasonably be understood to extend to a particular container, the Fourth Amendment does not require a more explicit authorization. *Id.* Under the Fourth Amendment, an objective standard is used to determine the scope of a person's consent, and this standard is defined as what the typical reasonable person would have believed based upon the exchange between the officer and the suspect. *See id.,* — U.S. at —, 111 S.Ct. at 1803–1804. Generally, it is objectively reasonable for police to conclude that the general consent to search a car for drugs includes consent to search containers within the car that might bear drugs. *See id.* Such a conclusion is proper because a reasonable person may be expected to know that narcotics are generally carried in some form of container. *See id.*

In *Florida v. Jimeno,* the officer had expressly stated that he had reason to believe that the suspect was carrying narcotics in his car before the officer asked for the suspect's consent to search the car. *See id.,* — U.S. at —, 111 S.Ct. at 1803. The officer had also explained to the suspect that the suspect did not have to consent to the search. *Id.*

The Fifth Circuit has recently applied the rationale of *Florida v. Jimeno* to a consensual search of a house. *See United States v. Ibarra,* 948 F.2d 903, 905 (5th Cir.1991) (suggestion for rehearing en banc granted February 21, 1992). In *Ibarra,* the police had expressly asked the defendant Chambers if they could search the house for evidence of money laundering and drug trafficking. The defendant agreed to the search, but the defendant did refuse to sign a consent form because he did not own the house. *Id.* at 905. Presumably, even though he did not sign, the consent form would have made the defendant fully aware of his right to refuse consent to search the house. Also, in *Ibarra,* one of the officers was able to view a bag through a crack in the boards covering the entrance to the attic. *See id.* at 906.

The Fifth Circuit agreed that a general consent to search a house does not permit police to demolish access into an area of the house whose entry was not reasonably included within the consent. *United States v. Ibarra,* 948 F.2d at 907. The majority of the court stated that in the instant case that the police did enter an area that could be reasonably construed to be within the bounds of consent. *See id.* The scope of consent issue that was before the Fifth Circuit and is presently before this Court turns on whether the typical reasonable person would have understood the consent to extend to the luggage. *See id.* at 906.

An objectively reasonable person would not have concluded that the defendant's "consent" in this case would have extended to the suitcase. Apparently conceding his belief that he did not have probable cause to search the vehicle, the trooper thrice asked the defendant if the trooper could "look in" the defendant's pickup truck. Although he had previously asked the defendant whether there were any narcotics or firearms in the vehicle, the trooper's subsequent requests did not amount to a request for permission to search the vehicle specifically for drugs or other contraband. The trooper did not ask the defendant expressly or implicitly whether the trooper could search the truck for illegal narcotics. The trooper did not ask the defendant whether he could search the suitcase before the trooper had opened the closed container. Essentially, the defendant's affirmative response to the trooper's request to "look in" the defendant's vehicle cannot be reason-

ably viewed as a consent to search closed containers within the vehicle.

The trooper could easily have asked the defendant's permission to search for drugs. The trooper also could have easily asked the defendant's permission to search the contents of the suitcase. The trooper made neither of these requests.

 Another general principle of law is that closed packages and containers may not be searched without a warrant. *See United States v. Ross,* 456 U.S. 798, 812, 102 S.Ct. 2157, 2166, 72 L.Ed.2d 572 (1982). Generally, the Fourth Amendment provides protection to the owner of every container that conceals its contents from plain view. *Id.,* 456 U.S. at 822, 102 S.Ct. at 2172. In *Ross,* the police officers had probable cause to search the suspect's entire vehicle for narcotics. *See id.,* 456 U.S. at 817 and n. 22, 102 S.Ct. at 2168–2169 and n. 22. A warrant to search a vehicle would support a search of every part of the vehicle and every container therein that might contain the object of the search. *Id.,* 456 U.S. at 821, 102 S.Ct. at 2171. The Court stated:

> When a legitimate search is under way, and when its purpose and its limits have been precisely defined, nice distinctions between closets, drawers, and containers, in the case of a home, or between glove compartments, upholstered seats, trunks, and wrapped packages, in the case of a vehicle must give way to the interest in the prompt and efficient completion of the task at hand.

*Id.* (footnote omitted) (emphasis added). The scope of a warrantless search of a vehicle is defined by *the object of the search* and the places in which there is *probable cause* to believe such object may be found, not by the type of the container. *Id.,* 456 U.S. at 824, 102 S.Ct. at 2172. "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *Id.,* 456 U.S. at 825, 102 S.Ct. at 2173. The same principles apply in the objective test used to determine the scope of consent by a suspect.

The Supreme Court has stated that the Fourth Amendment's application to containers and other parcels does not depend upon whether they are seized from an automobile. *See id.,* 456 U.S. at 814 n. 19, 102 S.Ct. at 2167 n. 19 (citing *Arkansas v. Sanders,* 442 U.S. 753, 764 n. 13, 99 S.Ct. 2586, 2593 n. 13, 61 L.Ed.2d 235 (1979)). By their very nature, some containers are not protected by any reasonable expectation of privacy because their contents can be inferred from their outward appearance. *Id.* (referring to a kit of burglar tools and a gun case as examples of such containers). If the contents of packages are open to plain view, there is no need for a warrant. *Id.* In the present case, no party argued that the contraband was open to plain view. The photographs admitted into evidence show that the no inference could be made merely from looking at the outside of the suitcase that narcotics were concealed therein. If the suitcase had been open on the back seat such that the marijuana was clearly visible, the trooper most likely could have properly obtained the evidence based upon an "open fields" justification.

The Supreme Court has recently abrogated the holding of its earlier *Arkansas v. Sanders* decision. *See generally California v. Acevedo,* —— U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). In *California v. Acevedo,* the Supreme Court held that:

> The police may search an automobile and the containers within it where they have probable cause to believe the contraband or evidence is contained.

*See id.,* —— U.S. at ——, 111 S.Ct. at 1991. If they have probable cause to believe contraband is contained therein, the police may search a container located within a car even though the police do not have probable cause to search the entire car. *See id.* "The police may search without a warrant if their search is supported by probable cause." *Id.* The trooper did not have probable cause to search the vehicle nor the closed containers therein.

 Also, the trooper had not "seized" the defendant merely by the officer's pulling the defendant over and asking

questions. The Fifth Circuit has clearly established that an agent's self-identification as a law enforcement officer is not so coercive that such a statement alone renders an encounter between a person and police a seizure. *See United States v. Simmons,* 918 F.2d 476, 480–481 (5th Cir. 1990) (citations omitted). A person has been seized within the meaning of the Fourth Amendment only if the totality of the surrounding circumstances would lead a reasonable person to believe that he was not free to leave. *See California v. Hodari D.,* — U.S. —, —, 111 S.Ct. 1547, 1551, 113 L.Ed.2d 690 (1991) *citing to United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). A seizure requires a "show of authority" by an officer's words and actions that would objectively lead a reasonable person to conclude that the officer was ordering the person to restrict his or her movements. *See id.* Such a "seizure" may well have occurred once the officer had received the return call that the computer was down. At that time, because the trooper still had the defendant's driver's license and insurance papers, the defendant may have had an objective reason to believe that he was not free to leave. *See id.,* — U.S. at —, 111 S.Ct. at 1552. At the earliest, a seizure may have occurred when the officer asked to look into the defendant's car. Assuming that the defendant voluntarily consented to the officer's "looking" into his car search, any evidence obtained within the bounds of a consensual search was properly seized. *See Simmons,* 918 F.2d at 481 and n. 6.

Any evidence "seized" beyond the scope of consent is improperly seized and should be suppressed. Even if freely and voluntarily given, the defendant's consent at most objectively permitted the trooper to "look in" the defendant's truck. The totality of the circumstances do not support any argument that the scope of the consent included closed containers within the defendant's vehicle, based upon the defendant's affirmative response to the officer's third request. Because the marijuana in the suitcase was improperly seized by the trooper, this evidence is hereby suppressed.

Consequently, the subsequent arrest and additional evidence obtained by the trooper are also suppressed because all flowed from the initial illegal search of the defendant's suitcase.

■■■■ Under the Fourth Amendment, police officers must make a determination of probable cause before any significant pretrial restraint of liberty may occur. *Duckett v. City of Cedar Park, Texas,* 950 F.2d 272, 278 (5th Cir.1992). The Fifth Circuit recognizes three levels of Fourth Amendment concerns to determine whether a "seizure" has occurred:

(1) Mere communications between officers and citizens involving no coercion or detention do not implicate the Fourth Amendment.

(2) In an investigatory stop, the brief seizure must be supported by a reasonable suspicion of the law enforcement officer.

(3) In a full-scale arrest, the officer must have probable cause.

*United States v. Watson,* 953 F.2d 895, 897 at n. 1 (5th Cir.1992), *citing United States v. Zukas,* 843 F.2d 179, 181–182 (5th Cir. 1988), *cert. denied,* 490 U.S. 1019, 109 S.Ct. 1742, 104 L.Ed.2d 179 (1989). The Fourth Amendment requires probable cause for arrests made with or without a warrant. *United States v. Raborn,* 872 F.2d 589, 593 (5th Cir.1989) (citations omitted). "Although the initial stop of the suspect may have been justified only by reasonable suspicion, additional facts gathered from that stop may strengthen that suspicion into probable cause." *United States v. Martinez,* 808 F.2d 1050, 1055 (5th Cir.1987), *cert. denied* 481 U.S. 1032, 107 S.Ct. 1962, 95 L.Ed.2d 533 (1987). An arrest occurs when, "under the totality of the circumstances," a reasonable person would believe he or she is not free to leave. *United States v. Webster,* 750 F.2d 307, 320 (5th Cir.1984), *cert. denied,* 471 U.S. 1106, 105 S.Ct. 2340, 85 L.Ed.2d 855 (1985). In this case, the a reasonable person would not have believed that he or she was free to leave following the trooper's requests to search the defendant's vehicle.

Proof of probable cause requires less evidence than proof beyond a reasonable doubt but more than "bare suspicion." *United States v. Raborn*, 872 F.2d 589, 593 (5th Cir.1989) (footnote and citation omitted). The required showing is only the probability that the arrested person has engaged in criminal activity and not a prima facie showing of guilt. *See id. citing Spinelli v. United States*, 393 U.S. 410, 419, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969). The Fifth Circuit did not decide whether the Fourth Amendment requires a preponderance of the evidence standard or merely a substantial probability standard. *See id.* 89 S.Ct. at 593–594. The Supreme Court has stated the issue as whether there is a "fair probability" that a crime is occurring. *United States v. Antone*, 753 F.2d 1301, 1304 (5th Cir.1985), *cert. denied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985) *citing Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). A showing that a belief is correct or more likely true than false is not required to show probable cause. *Id. citing Texas v. Brown*, 460 U.S. 730, 103 S.Ct. 1535, 1543, 75 L.Ed.2d 502 (1983).

Probable cause "exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to cause a person of reasonable caution to believe that an offense has been or is being committed." *United States v. Abadie*, 879 F.2d 1260, 1263 (5th Cir.1989); *United States v. Antone*, 753 F.2d at 1304. In determining the existence of probable cause, the court must consider the experience of the officers since conduct apparently innocent to the untrained observer may not be to the experienced or trained observer. *United States v. Tolliver*, 780 F.2d 1177, 1185 (5th Cir.1986) (citations omitted). Probable cause to arrest is a question of law to be determined by a review of the totality of the circumstances surrounding the arrest. *United States v. Antone*, 753 F.2d at 1304. Such probable cause makes a warrantless arrest valid. *See United States v. Logan*, 949 F.2d 1370, 1379 (5th Cir.1991) (citation omitted).

If the "totality of the circumstances" demonstrates the accuracy of an informant's statements, an officer can use such information to decide whether such probable cause exists. *United States v. Abadie*, 879 F.2d at 1263, *citing Illinois v. Gates*, 462 U.S. at 238, 103 S.Ct. at 2332. These statements include hearsay evidence that the officer reasonably believes are reliable. *Id.* (citing *United States v. Hernandez*, 825 F.2d 846, 850–851 (5th Cir.1987), *cert. denied* 484 U.S. 1068, 108 S.Ct. 1032, 98 L.Ed.2d 996 (1988)). In this case, the officer did not rely on any statements by any informant.

Officers may find probable cause based upon information communicated to them by fellow officers. *United States v. Armendariz–Mata*, 949 F.2d 151, 153 (5th Cir. 1991), *citing United States v. Hensley*, 469 U.S. 221, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). This "collective knowledge doctrine" applies in two instances:

(1) Having no personal knowledge of any of the facts establishing probable cause, an officer may make an arrest to carry out directions from another officer who does have probable cause.

(2) Having personal knowledge of some facts that standing alone do not amount to probable cause, an officer may make an arrest when those facts are added to information known by other officers would amount to probable cause.

*Charles v. Smith*, 894 F.2d 718, 724 (5th Cir.1990), *cert. denied* —— U.S. ——, 111 S.Ct. 384, 112 L.Ed.2d 395 (citing *United States v. Webster*, 750 F.2d at 323). Again, the trooper did not rely on any statements made by other officers.

When a lawful arrest is made based upon probable cause, an officer may search the arrested person to discover and remove weapons and to seize evidence to prevent its concealment or destruction. *United States v. Randall*, 887 F.2d 1262, 1267 (5th Cir.1989). An officer may also search the area "within the immediate control" of the subject, meaning the area from which the person might gain possession of a weapon or destructible evidence. *Id. citing Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

▉ Seizures of evidence are permissible when the seizures are the result of a search pursuant to a lawful arrest. *See United States v. Armendariz–Mata,* 949 F.2d at 154 (citation omitted). If the officers have probable cause to believe that an automobile contains contraband or evidence from a crime, the officers do not need a warrant to search the vehicle. *See id.* (citation omitted). Also, if they have probable cause as to the entire vehicle, the officers may search any containers found within the vehicle where the contraband or evidence may reasonably be found. *Id.* (citation omitted).

The Fifth Circuit has found that probable cause existed based upon reliable information and surveillance of suspicious activities. *See United States v. Bustamante–Saenz,* 894 F.2d 114, 118 (5th Cir.1990). In that case, the defendant Bustamante had been linked to another defendant. *See id.* Also, after receiving reliable information and a tip, officers observed the defendant Bustamante and others arrive in pickup truck and park next to a car that was reasonably believed to be involved in a drug transaction at that moment. *Id.* A few minutes later, the pickup left the area by driving a short time before turning on its lights. *Id.* The defendant was found inside the truck. *Id.*

In another case the Fifth Circuit found probable cause based upon statements by a confidential informant and corroborating surveillance by officers. *See United States v. Abadie,* 879 F.2d at 1263. The officers personal observations confirmed some of the information supplied by the informant. *Id.* The officers also saw two individuals acting as lookouts and engaging in countersurveillance. *Id.* The officers then arrested the individuals who were proceeding in vehicles towards the place where the informant had stated that the transaction would occur. *Id.*

Merely seeing someone talking to or in the presence of a known criminal does not amount to probable cause for an officer to make an arrest. *See United States v. Raborn,* 872 F.2d at 594. In conjunction with such a surveillance, other circumstances may establish probable cause. *Id.*

▉ In the present case, the only arguable factors that the trooper was aware of to attempt to establish probable cause are the following, which are based upon the trooper's report written five days after the encounter with the defendant. The trooper had noticed a "strong" odor of fabric softener. Apparently, fabric softener is often used to disguise the odor of marijuana. Also, the defendant was from the southern region of Texas and travelling to northern Texas. The defendant's route of travel was, however, entirely consistent with the defendant's stated destination. The trooper testified that the defendant gave him a conflicting account as to how long the defendant intended to stay at the destination point. The trooper did not question the defendant about this inconsistency. Also, the trooper stated that the defendant's hand was shaking. These factors do not constitute probable cause under any of the above-mentioned cases or any other cases.

IT IS ORDERED that the Defendant's Motion to Suppress Evidence and Supplemental Motion to Suppress Evidence are GRANTED to the extent consistent with this opinion.