**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 91-2599**
_____


**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**VERSUS**


**RAFAEL PEREZ-BUSTAMANTE,**

**Defendant-Appellant.**

_____

Appeal from the United States District Court
for the Southern District of Texas
_____

(May 29, 1992)

Before SNEED,[1] REAVLEY, and BARKSDALE, Circuit Judges.

BARKSDALE, Circuit Judge:

The single issue before us is whether Rafael Perez-Bustamante's confession, given on Monday morning, the day before New Year's and approximately 60 hours after his Friday night arrest, should have been suppressed as involuntary, solely because, prior to his confession, he had not been taken before a magistrate. We **AFFIRM**.

---

[1] Senior Circuit Judge of the Ninth Circuit, sitting by designation.

At 9:00 p.m. on Friday, December 28, 1990, in response to a sensor alert,[2] Border Patrol Agents were dispatched to an area near the Rio Grande River, sixteen miles east of the International Bridge at Brownsville, Texas. On arriving, they observed Perez looking toward a trail that led to the river. Ordered to come forward, Perez drew a pistol.[3]

Perez was arrested; and when two more agents arrived, they pursued two other individuals. From the trail leading to the river, they observed four or five persons swimming back across the river. The agents found two wet inner tubes along the river bank; two pistols; and two large bags containing 167 pounds of marijuana in the field next to the river (approximately 100 to 150 yards from the arrest site).

At the arrest site, an agent read Perez his Miranda rights (in Spanish). After Perez was taken to the Brownsville Border Patrol Station, he was again read those rights (in Spanish). Perez waived them (written) and was interviewed and processed for Immigration purposes. He stated that he was a Mexican citizen and had entered the United States illegally.[4] As part of his processing as an illegal alien, Perez executed several forms which explained the

---

[2]    A sensor is a device planted in the ground that alerts to pressure vibrations in the area around it.

[3]    An agent drew his pistol and shouted (in Spanish) "Immigration. Drop the pistol." After this command was repeated several times, Perez obeyed.

[4]    Perez does not challenge this confession.

reason for his arrest and his rights in deportation proceedings.[5]

Because the Border Patrol was not authorized to process Perez on drug charges, it notified DEA Agent Tamayo of the seizure and that Perez was in custody. After midnight, Perez was taken by Border Patrol Agents to the Port Isabel Service Processing Center (a Border Patrol detention camp) in Bayview, Texas.

Magistrates were not available for initial appearances during the weekend, but Tamayo expected that Perez would see one on Monday. On Monday, December 31, 1990, the marijuana and pistol were released to Tamayo; and between 10:00 and 11:00 a.m., Perez was taken to the Brownsville DEA office for processing on drug charges. Tamayo told Perez that morning that he (Perez) would see a magistrate that day; normally, defendants are arraigned between 1:30 and 3:00 p.m.[6]

---

[5] Those forms were: I-213 (Record of Deportable Alien); I-214 (Rights Form); I-221 (Form of Arrest for Illegal Entry Form) and I-274 (Voluntary Departure or Hearing Form).

[6] As discussed *infra*, it was not until after his interview with Perez that Tamayo learned that a magistrate was not available on December 31. The following colloquy occurred at the suppression hearing:

> THE COURT: At what time was this [Perez's] statement taken?
>
> [TAMAYO]: It was approximately 10:00 to 11:00 [a.m.] ... on Monday, December 31st.
>
> * * *
>
> THE COURT: In ordinary course, ... when do you take persons before the Magistrate? At what hour?
>
> [TAMAYO]: Normally between 1:30 and 3:00 is when they are arraigned....

Tamayo advised Perez of his Miranda rights (in Spanish) and informed him that he was being charged with possession of marijuana and carrying a weapon during a narcotics transaction.  Perez then informed Tamayo that he was carrying a gun to protect the load of marijuana, not to engage law enforcement; that he was hired by an individual named Juan from Matamoros; and that he was going to be paid $100 to assist and protect the marijuana.  Perez's statement was not in response to a question; as indicated, it was offered

THE COURT:    So if the Magistrate had been available [on Monday], the arraignment would, in ordinary course, have taken place that afternoon?

[TAMAYO]:    Yes, sir ....

* * *

[GOVERNMENT:]  Did you take the defendant in front of a Magistrate?

[TAMAYO:]    Well, I had told the defendant that he would appear before the Magistrate that day. Since one was not available, he would have to wait two days, which would have been the Wednesday appearance.

[GOVERNMENT:]  Did you tell him before or after he made the statement?

[TAMAYO:]    ... [I]t was after the statements, because it was after then that I found out that no Magistrate was available.

[GOVERNMENT:]  Okay.    Now, did you make any promises or threats to the defendant in order to obtain these statements?

[TAMAYO:]    None at all.

[GOVERNMENT:]  Did you take the defendant in front of the Magistrate at the earliest possible time?

[TAMAYO:]    Yes, it was, which was Wednesday on January 2nd, 1991.

- 4 -

after Tamayo informed him of the charges.[7]  The interview, which included fifteen minutes of taking photographs and fingerprints, lasted approximately thirty minutes.  After the interview, Tamayo learned that, because of the New Year's holiday, a magistrate would not be available until Wednesday, January 2.  He informed Perez, who remained in custody and did not appear before a magistrate until two days later.

Perez was indicted on six drug and weapons counts.[8]  Relying in part on 18 U.S.C. § 3501, discussed *infra*, he moved unsuccessfully to suppress his December 31 confession, contending that it was involuntary, solely because of the delay in his

---

[7]  Tamayo testified at the suppression hearing as follows:

> [TAMAYO:]  I don't recall that I asked him a question.  It was after I told him what he was being charged with that he explained to me about what the purpose of the firearm was.  He was very concerned about that.
>
> [DEFENSE COUNSEL:]  You asked him no questions?
>
> [TAMAYO:]  When I told him what he was charged with, that's when he just started -- we carried on a conversation.  There [were] no specific questions.  And he was concerned about the firearm.

[8]  He was indicted for (1) conspiracy to import more than 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 963, 952(a), and 960(b)(3); (2) importing approximately 167 pounds of marijuana, in violation of 21 U.S.C. §§ 952(a), 960(b)(3), and 18 U.S.C. § 2; (3) conspiracy to possess with intent to distribute more than 50 kilograms of marijuana, in violation of 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(C); (4) possessing with intent to distribute approximately 167 pounds of marijuana, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C), and 18 U.S.C. § 2; (5) possession of a firearm during and in relation to a drug trafficking offense, in violation of 18 U.S.C. § 924(c); and (6) possessing a firearm as an illegal alien, in violation of 18 U.S.C. 922(g)(5).

appearing before a magistrate.  In March 1991, Perez was tried before a jury and convicted on all counts.  He was sentenced, *inter alia*, to 101 months' imprisonment.

## II.

Perez confessed approximately 60 hours after he was arrested and two days prior to appearing before a magistrate.  Arrested without a warrant on Friday night, Perez contends that, under the Fourth Amendment, he was required to be taken before a magistrate prior to the time on Monday that he confessed; and that accordingly, his confession was involuntary and, therefore, inadmissible.[9]

Federal Rule of Criminal Procedure 5(a) bears on this issue. It provides in pertinent part:  "An officer making an arrest ... shall take the arrested person without unnecessary delay before the nearest available federal magistrate or, in the event that a federal magistrate is not reasonably available, before a state or local judicial officer authorized by 18 U.S.C. § 3041."  For Rule 5(a) purposes here, in determining whether the delay rendered the pre-presentation confession inadmissible, our focus is on 18 U.S.C. § 3501, which provides in part:  "In any criminal prosecution brought by the United States ... a confession ... shall be admissible in evidence if it is voluntarily given."  18 U.S.C. §

---

[9]    Perez concedes that the subsequent period between the Monday confession and Wednesday appearance is not relevant.  And, because we hold that the confession was admissible, we need not reach the issue of harmless error.

3501(a).[10]   Section 3501 requires the trial judge to determine voluntariness in light of

> all the circumstances surrounding the giving of the confession, including (1) *the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment*, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.
>
> The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness.

18 U.S.C. § 3501(b) (emphasis added).

After the testimony at the suppression hearing, the following exchange occurred:

> THE COURT:   ....   Now, are you attacking voluntariness?  I don't have any evidence to the contrary.
>
> * * *
>
> [DEFENSE COUNSEL]:   Your Honor, it is not my obligation to attack anything ....   What I am saying is that the Government has not fulfilled [its] burden in proving that Rafael Perez-Bustamante gave his confession knowingly and voluntarily....
>
> THE COURT:   ... I don't have any evidence other than it was voluntary and I so find.  Aren't you also addressing the fact that there was a delay?

---

[10]   Although Perez did not rely on Rule 5(a) in district court, he did rely, as noted, upon § 3501.

- 7 -

[DEFENSE COUNSEL]: [T]he delay under [§] 3501(b) is one of the considerations that the trial judge in determining the issue of voluntariness shall take into consideration.... [T]he delay contributed to the involuntariness of the confession ....

[THE COURT]: I don't agree.... I will tell you where I might have to agree. Had there been some statements made after Monday morning [December 31], I think that would have been an undue delay. But up till Monday morning, there was nothing that doesn't happen in ordinary course. In other words, when people are arrested Friday late, that they are simply taken before a Magistrate Monday during the course of the day.

And what statements he made to Mr. Tamayo were made prior to the time that he ordinarily would have been taken to the Magistrate anyway. I don't think that departure is sufficient to where it would totally affect the voluntariness of the making of the statement.

I would call to your attention that the evidence before me ... indicates, and there is nothing to the contrary, that the warning was not given once, but it was given three times before he made a statement to Mr. Tamayo. I don't think that the delay is such that it caused or created in the defendant a setting by which he did not knowingly and willfully make a statement.

Section 3501 further provides:

[A] confession ... shall not be inadmissible solely because of delay in bringing a person before a magistrate ... if such confession is found by the trial judge to have been made voluntarily and if the weight to be given the confession is left to the jury and if such confession was made or given by such person within six hours immediately following his arrest ... *Provided*, That the time limitation ... shall not apply in any case in which the delay in bringing such person before such magistrate ... beyond such six-hour period is found by the trial judge to be reasonable considering the means of transportation and the distance to be traveled to the nearest available such magistrate or other officer.

- 8 -

18 U.S.C. § 3501(c). Perez asserts that § 3501(c) renders inadmissible all confessions obtained more than six hours after arrest, unless the delay is occasioned by "the means of transportation and the distance to be traveled to the nearest available ... magistrate". However, this court rejected that construction in *United States v. Hathorn*, 451 F.2d 1337, 1341 (5th Cir. 1971):

> While Section 3501(c) can be construed to mean that the only confessions obtained more than six hours after arrest that can be admitted are those that were elicited during the time necessary for travel to the magistrate, we agree with the 9th Circuit [*United States v. Halbert*, 436 F.2d 1226 (9th Cir. 1970)] that Congress did not intend to legislate any such arbitrary edict. We believe the correct interpretation to be that Congress established six hours as a minimum period which would pass muster. If, therefore, a longer delay occurs, it merely constitutes another factor to be considered by the trial judge in determining voluntariness.

Furthermore, in *United States v. Bustamante-Saenz*, 894 F.2d 114, 119-20 (5th Cir. 1990), we upheld the admission of a confession given nine and one-half hours after arrest. Similar to this case, there was no evidence that the delay was for the purpose of extracting a confession or that the interrogation was lengthy, hostile, or coercive, even though the defendant was detained more than thirty hours before he was presented to a magistrate. *Id*.

"Once a defendant has been tried and convicted, delay in bringing him before a magistrate is not reason to set aside the conviction unless the defendant can show that he was prejudiced by the delay." *Id.* at 120 (quoting *United States v. Causey*, 835 F.2d 1527, 1529 (5th Cir. 1988)). "[D]elay is `simply one factor which

must be considered along with other factors in determining voluntariness.'" *Id*. (quoting *United States v. Gorel*, 622 F.2d 100, 104 (5th Cir. 1979), *cert. denied*, 445 U.S. 943 (1980)). "[W]here there is no evidence to support a finding that the delay was for the purpose of obtaining a confession, there is no evidence that the delay had a coercive effect on the confession, there is no causal connection between the delay and the confession, and the confession was otherwise voluntarily given, we hold that the defendant has not shown prejudice by the delay." *Id*.

Perez, however, seeks to impose a new standard, based on *County of Riverside v. McLaughlin*, ___ U.S. ___, 111 S. Ct. 1661 (1991). He maintains that, under *McLaughlin*, the 60 hours between his arrest and confession is "not tolerable".[11] "In *Gerstein v. Pugh*, 420 U.S. 103 (1975), [the] Court held that the Fourth Amendment requires a prompt judicial determination of probable cause as a prerequisite to an extended pretrial detention following a warrantless arrest." *McLaughlin*, 111 S. Ct. at 1665. In *McLaughlin*, a § 1983 case, the Supreme Court addressed "what is prompt under *Gerstein*." *Id.*

> Where an arrested individual does not receive a probable cause determination within 48 hours .... the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstance. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial [probable cause and arraignment] proceedings does not qualify as an

---

[11]   *McLaughlin* was decided approximately two and one-half months after the suppression hearing in this case.

> extraordinary circumstance.  Nor for that matter,
> do intervening weekends.

*Id*. at 1670.

Perez asserts that the 48-hour requirement applies here. *McLaughlin*'s requirement arose out of concern that, following a warrantless arrest, "prolonged detention [by a State] based on incorrect or unfounded suspicion may unjustly `imperil [a] suspect's job, interrupt his source of income, and impair his family relationships.'" *Id*. at 1668 (quoting *Gerstein*, 420 U.S. at 114) (brackets by Supreme Court).  The Court stated in *McLaughlin* that its "purpose in *Gerstein* was to make clear that the Fourth Amendment requires every State to provide prompt determinations of probable cause...." *Id.*  On the federal stage, Rule 5(a) addresses this concern.

On the other hand, § 3501 focuses on voluntariness and addresses the concern that a federal conviction be based on reliable evidence.  *See* *Crane v. Kentucky*, 476 U.S. 683, 687-92 (1986).  This concern is adequately protected, under § 3501, by requiring the district court to consider carefully the issue of unreasonable delay and by placing voluntariness before the trier of fact.[12]

The delay reflected in this case is cause for considerable concern, as discussed below.  Under the § 3501 totality of the circumstances test, however, we cannot say that the delay prior to the confession rendered it inadmissible.  Perez was arrested late

---

[12]    Perez requested, and received, an instruction pertaining to the statement's voluntariness.

Friday night; he was being held as an illegal alien (in part as the result of a confession not challenged here); and he had executed forms which explained the reason for his detention on immigration charges. There is no evidence that the delay in presenting Perez to a magistrate was for the purpose of interrogation. Perez never claimed this; instead, he conceded for purposes of his suppression motion that "the delay was not designed by the Government, (no Magistrate was available until Wednesday morning)." Furthermore, there is no evidence that the interrogation was lengthy, hostile, or coercive. To the contrary, the interview with Tamayo lasted about thirty minutes, fifteen of which were devoted to fingerprinting and photographing. Perez had been read Miranda warnings three times, once immediately before the interview. Tamayo testified that, during the interview, he and Perez "carried on a conversation" and that "[t]here were no specific questions." In fact, as discussed, Perez volunteered the information after being advised of the charges against him. Finally, the record does not suggest that the delay in any way caused Perez to confess. As noted, Perez confessed on Monday morning, after he was told, mistakenly, that he would see a magistrate in a few hours.

Our holding should not be understood to condone the almost five-day delay in taking a defendant before a magistrate. Such delay, even for a holiday period, is not acceptable as standard operating procedure; far from it.

III.

Accordingly, the judgment is

**AFFIRMED.**